IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA HENNING,

        Petitioner,

v.                                                    No. CIV 08-328 RB/LFG

ALLEN COOPER, Warden,
and the ATTORNEY GENERAL
OF THE STATE OF NEW MEXICO,

        Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      On March 26, 2008, Petitioner Linda Henning ("Henning") brought this petition for

writ of habeas corpus under 28 U.S.C. § 2254.  [Doc. 1].  On May 8, 2008, she filed an addendum

to the federal habeas petition.  [Doc. 6.]  On August 7, 2008, Respondents filed an Answer.  [Doc.

12.]  On the same day, August 7, 1008, Respondents filed a Motion to Dismiss and an accompanying

memorandum, arguing that Henning did not exhaust all of the claims raised in the federal habeas

petition.  [Doc. Nos. 13, 14.]  On August 25, 2008, Henning filed a response [Doc. 15], and on

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

September 9, 2008, she filed a second addendum to the federal habeas petition.[2]   [Doc. 16.]
Respondents did not file a reply in support of the motion to dismiss.  In making these findings and
recommendations on the motion to dismiss, the Court reviewed all of the above-mentioned pleadings
along with the extensive exhibits.[3]

2.      Henning is currently confined at the New Mexico Women's Correctional Facility in
Grants, New Mexico.  [Doc. 1.]  On April 18, 2003, Henning was sentenced by the Second Judicial
District Court in Bernalillo County (State v. Henning, No. CR 2001-02063) after a jury convicted
her of First Degree Murder (felony murder), Kidnapping, Conspiracy to Commit Kidnapping, three
counts of Perjury; Criminal Solicitation to Commit Perjury, two counts of Tampering with Evidence,
and Conspiracy to Commit Tampering with Evidence.  [Doc. 9, Ex. B.]  The Judgment, Sentence
and Commitment was entered on May 5, 2003.  [Doc. 9, Ex. B.]  Henning was sentenced to a total
sentence of Life plus 43½ years or a total of 73½ years.  [Doc. 9, Ex. B, p. 3.]

3.      As grounds for federal review, Henning brings four broad claims:  (1) denial of due
process and a fair trial based on the trial court's abuse of discretion; (2) ineffective assistance of
counsel; (3) denial of due process and a fair trial based on prosecutorial misconduct; and (4)
insufficiency of the evidence.  [Doc. Nos. 1, 6, 16.]  The four claims consist of multiple sections or

---

[2]The addenda filed by Henning [Doc. Nos. 6, 16] did not add new claims to the federal habeas petition.
Rather, Henning re-argued some of the same claims, e.g., Claim 3 ("prosecutorial misconduct") and Claim 2
("ineffective assistance of counsel).

[3]Respondents provided a limited number of exhibits that they believed necessary to decide the motion to
dismiss.  The Court understands that the actual state trial transcript consists of approximately 29 volumes and one
supplemental transcript related to a motion for a new trial, and three volumes of the record proper.  The entire
record proper also includes an envelope of exhibits including grand jury tapes, Henning's videotaped police
interview and transcript, a taped conversation between Henning and another individual, and questions by the jury.
[Doc. 9, Ex. E. p. v.]  The entire record proper and transcripts may number 10,000 pages or more.  For purposes of
this motion to dismiss, the Court examined approximately 500 pages of pleadings.  Henning provides an extensive
list of claims and intersperses those claims with pages of trial exhibits or other documents.  The same is true for her
state habeas petition and petition for writ of certiorari to the New Mexico Supreme Court that she prepared pro se.

subclaims.  Claim 1 is made up of 14 individual subclaims.  Claim 2 is made up of four separate sections (1-4), and a total of about 143 individual subclaims.  Claim 3 is made up of three separate sections (1-3), and a total of about 44 individual subclaims.  Claim 4 contains 18 subclaims.  Thus, Henning seeks to bring approximately 219 claims or subclaims in her federal habeas petition.

4.      The factual bases for some of the claims are repetitive, and some of the claims are duplicative.  While Henning numbered the subclaims and sections of her federal habeas claims, she did not number the individual claims in her state habeas petition making it difficult to compare which claims she presented to both the state and federal courts.  In Respondents' motion to dismiss, they assigned numbers to the subclaims in Henning's state habeas petition.  [Doc. 14, p. 13, n. 5.]

5.      While the Court reviewed the subclaims that Respondents identified as not having been exhausted, the Court made an independent review of all of Henning's subclaims and the pertinent pleadings to determine whether she exhausted each claim set forth in her federal habeas petition.

6.      Respondents argue that a number of Henning's claims are not exhausted and that her federal habeas petition is a "mixed" petition.  They ask the Court to require Henning to elect between (1) dismissal of her unexhausted claims and proceeding in this Court with her exhausted claims; and (2) returning to state court to exhaust her state court remedies for the alleged unexhausted claims.  [Doc. 13.]

**Factual Background**

7.      For purposes of the Motion to Dismiss, it is not necessary to provide a detailed summary of the factual background of this case.  Briefly stated, there was evidence presented that

Henning met Diazien Hossencofft ("Diazien") in the Summer of 1999.[4]  At the time, Diazien, was married to Girly Hossencofft ("Girly"), but the parties were involved in divorce proceedings.  In the Summer or Fall of 1999, Henning helped provide care to Diazien who was feigning a terminal illness.  Henning also became his lover but knew he had a "fiancé" in South Carolina and that he intended to move to South Carolina.  [Doc. 9, Ex. E.]

8.      After meeting Diazien, Henning introduced him to Bill Miller ("Miller").  "All three had a common interest in UFOs, aliens, metaphysics, and conspiracy theories."  [Doc. 9, Ex. E.] Miller claimed to be a "militia type."

9.      Girly was last seen on September 9, 1999; her body was never found.  On September 10, 1999, when she did not report to her job as a bank teller at Bank of America in Albuquerque, New Mexico, police were alerted and began an investigation.  On the same day, a blouse, shorts and underwear, stained with blood, were found by the shoulder of U.S. Highway 60 near Magdalena, New Mexico.  DNA analysis indicated that the blood on the clothing was Girly's blood.  [Doc. 9, Ex. H.]

10.      Prior to Girly's disappearance, Diazien threatened Girly that he would kill her and her body would never be found.  [Doc. 9, Ex. H.]  Diazien and Henning were indicted by a grand jury for the murder and kidnapping of Girly.  Diazien pleaded guilty, claiming he was the "master mind" behind the murder of Girly and her missing body.  [Doc. 9, Ex. E.] Diazien testified on behalf of Henning at Henning's trial, and stated, in part, that the actual kidnapping and murder of Girly were carried out by Miller.  The jury did not believe Diazien's version and convicted Henning, as

---

[4]The partial factual background is taken from the parties' underlying pleadings and the New Mexico Supreme Court's decision denying Henning's appeal.  [Doc. 9, Exhibits.]

already described.  The trial was conducted in late 2002.  The television program "Court TV"

broadcast the trial in early 2003.

## Procedural History

11.     On November 18, 1999, a Grand Jury in Bernalillo County issued an Indictment

charging Henning with first degree murder, conspiracy to commit first degree murder, first degree

kidnapping, conspiracy to commit kidnapping, four counts of perjury, two counts of criminal

solicitation to commit perjury, five counts of tampering with evidence, and five counts of conspiracy

to commit tampering with evidence in the murder of Girly.  The State filed a notice of intent to seek

the death penalty, alleging aggravating circumstances that Henning allegedly committed the murder

during the commission of or attempt to commit kidnapping.  [Doc. 13, ¶ 1.]

12.     Discovery proceeded.  In addition, the state district court held a competency hearing

and other hearings related to discovery disputes.  Henning changed attorneys three times.  She states

she had ten attorneys.[5]

13.     On July 17, 2001, a Nolle Prosequi as to the entire Indictment in CRCR 99-03647

was entered.  [Doc. 9, Ex. A.]  The pleading indicated that an Investigatory Grand Jury had

convened in this earlier captioned matter from September 22, 1999 to November 17, 1999, and that

because Henning had filed a motion regarding the Indictment and also to "accomplish a refinement

of the Grand Jury with additional inclusion of evidence – both forensic and otherwise – . . . this

---

[5]Henning claims that one attorney, Darryl Cordle embezzled over $30,000 from her and that due to potential criminal drug charges against Cordle, he left New Mexico and gave up his license to practice law.  [Doc. 1.]  With respect to another of Henning's attorneys, Trienah G. Meyers, Henning claims that Meyers had to give up her license to practice law because she misappropriated $25,000 from the State Trial Lawyer's Fund and that Meyers was also attending Narcotics Anonymous when she represented Henning.  [Doc. 1.]  Henning argues that another of her attorneys, Edward Bustamante, failed to attend hearings in this case, either alone or with Henning.  [Doc. 1.]  Finally, Henning asserts, in part, that her trial attorney, Gary Mitchell, "rushed the case to trial with no more than a 'four leaf clover' and his 'lucky rabbit's foot.'"  [Doc. 1, Doc. 9, Ex. J, p.49.]

Nolle Prosequi will be filed and the matter re-presented to the Grand Jury."  [Ex. A.]  Henning argues the first proceeding was "nollied" because it was illegal due to perjured testimony.  [Doc. 9, Ex. J, p. 42.]

14.     On July 17, 2001, the Grand Jury in Bernalillo County issued a new Indictment charging Henning with first degree murder, conspiracy to commit first degree murder, first degree kidnapping, conspiracy to commit kidnapping, four counts of perjury, criminal solicitation to commit perjury, six counts of tampering with evidence, and five counts of conspiracy to commit tampering with evidence.  [Doc. 13, ¶ 3.]  The State again filed a notice of intent to seek the death penalty.

15.     On Henning's motion, the state district court held a hearing, pursuant to State v. Ogden, 118 N.M. 234 (1994), to determine the existence of probable cause to support the aggravating circumstance of murder during the commission of or attempt to commit kidnapping. [Doc. 13, ¶ 4.]  This is a standard hearing in death penalty cases in New Mexico that is commonly referred to as an "Ogden hearing."  [Doc. 13, p. 3, n. 2.]  The state district court found probable cause, and the case proceeded as a death penalty trial.  [Doc. 13, ¶ 5.]  The penalty phase of the trial was bifurcated, requiring the State to prove the existence of the aggravating circumstance before proceeding with the defense's presentation of mitigating evidence and the jury's selection of an appropriate sentence.  In the first part of the penalty phase, the jury found that the State failed to prove the aggravating circumstance beyond a reasonable doubt.  As a result, the penalty phase was terminated, and the district court was required to impose a life sentence for the murder conviction.

16.     On October 25, 2002, Henning was convicted by a jury of the crimes listed above. [*See supra* at ¶ 2.]  Henning was represented at trial by attorneys Gary C. Mitchell and Monica D. Baca.  [Doc. 9, Ex. B.]

17.     Before sentencing, the state district court held two hearings on motions: 1) Henning's motion for judgment of acquittal notwithstanding the verdict and for new trial based on newly acquired evidence; and 2) the State's motion as to sentencing matters.  Henning's motion was denied.

18.     On April 18, 2003, Henning was sentenced before the Second Judicial District Court (W. John Brennan, District Judge).[6]  On May 5, 2003, a Judgment, Sentence and Commitment was entered.  [Doc. 9, Ex. B.]

19.     Henning's Notice of Appeal is dated May 12, 2003.  [Doc. 9, Ex. C.]  Trial Attorney Mitchell prepared Henning's Statement of Issues for Appeal, which was filed on June 19, 2003.  The issues raised on appeal will be discussed in more detail below.  [Doc. 9, Ex. D.]

20.     Henning's appellate brief-in-chief was filed August 13, 2004, and was prepared by Assistant Appellate Defender, Susan Roth.  [Doc. 9, Ex. E.]

21.     On December 20, 2004, the State filed its Answer Brief.  [Doc. 9, Ex. F.]

22.     On February 22, 2005, Henning filed her Reply Brief.  [Doc. 9, Ex. G.]

23.     On April 25, 2006, the New Mexico Supreme Court affirmed Henning's convictions except as to her convictions for perjury.  The perjury convictions were reversed due to inadequate notice.  [Doc. 9, Ex. H.]

---

[6]Judge Brennan was arrested for DWI and drug use in May 2004.  [Doc. 1, exhibits.]

7

24.     On May 11, 2006, the New Mexico Supreme Court issued a Mandate noting that it had affirmed the judgment in part and reversed in part.  [Doc. 9, Ex. I.]

25.     On October 3, 2006, Henning, acting *pro se* filed a lengthy handwritten state habeas petition, consisting of many claims.  The exhibits to which she sometimes referred were interspersed with the pages setting out her claims. [Doc. 9, Ex. J.]

26.     On August 7, 2007, the Second Judicial District Court entered an Order denying Henning's state habeas petition.  District Court Judge Albert S. Pat Murdoch noted in the Order that the issues raised were "essentially" the same issues decided by the New Mexico Supreme Court on appeal "however made to appear different through obfuscation and an overly circuitous approach." [Doc. 9, Ex. K.]  The State Court observed that a "point by point discussion" of Henning's claims would "go-on forever.  Rather than chasing the rabbit down the hole to points unknown, the Court [chose] several issues for discussion that [were] representative of the petition as a whole."  Any issues not specifically addressed by the Court's Order were deemed considered and denied.  [Doc. 9, Ex. K, p. 1.]

27.     On August 27, 2007, Henning filed a Petition for Writ of Certiorari in the New Mexico Supreme Court.  [Doc. 9, Ex. L.]  The Petition sets forth a lengthy list of claims interspersed with exhibit pages.  Henning also attached a copy of her entire state habeas petition, with exhibits, to the Petition for Writ.

28.     On September 21, 2007, the New Mexico Supreme Court entered an Order denying Henning's Petition for Writ of Certiorari.  [Doc. 9, Ex. M.]  The New Mexico Supreme Court did not provide analysis of the claims other than to say, upon consideration, the petition was denied.

**Exhaustion of State Remedies**

29.     A federal court may consider a petition for writ of habeas corpus only after the petitioner first presents her claims to a state court and exhausts her state remedies, unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack.  Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).  The Tenth Circuit has also held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review with the state supreme court.  Barnett v. LeMaster, 167 F.3d 1321, 1323 (10th Cir. 1999) (citing Dulin v. Cook, 957 F.2d 758, 759 (10th Cir. 1992)); Watson v. State of New Mexico, 45 F.3d 385, 387 (10th Cir. 1995).

30.     The exhaustion doctrine reflects the policies of comity and federalism between state and federal governments, a recognition that "'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  The exhaustion doctrine requires the petitioner to "fairly present" her claims to the state courts before a federal court will examine them. Id.  "Fair presentation" of a prisoner's claim means that the "substance of the claim" was raised before the state court either on appeal or in post-conviction proceedings as described above.  Id.

> Therefore, although a habeas petitioner will be allowed to present 'bits of evidence' to a federal court that were not presented to the state court that first considered [her] claim, evidence that places the

claims in a significantly different legal posture must first be presented
to the state courts.

Id. (internal citations omitted).  Even if the applicant raises the same _legal_ claims, e.g., ineffective

assistance of counsel, in state and federal proceedings, reliance in the two proceedings upon

different _factual_ grounds could "fundamentally" alter the legal claim and foreclose an argument of

exhaustion.

Cruz v. Warden, 907 F.2d 665, 668-69 (7th Cir. 1990).  As long as the petitioner did not

"fundamentally alter" the legal claim already presented to the state court, the claim will be

considered exhausted. _See_ Richey v. Bradshaw, 498 F.3d 344, 352-54 (6th Cir. 2007) (finding claim

of ineffective assistance of counsel was not "fundamentally altered" from that which was presented

to the state court).

31.     A state prisoner bringing a federal habeas petition bears the burden of showing she

exhausted state remedies.  Hernandez v. Starbuck, 69 F.3d 1089, 1092 (10th Cir. 1995), _cert. denied_,

517 U.S. 1223 (1996); Miranda v. Cooper, 967 F.2d 392, 398 (10th Cir.), _cert. denied_, 506 U.S. 924,

113 S.Ct. 347 (1992).

32.     In cases where a petition brings a federal habeas proceeding containing both

exhausted and unexhausted claims, the petition is considered mixed.  Rose v. Lundy, 455 U.S. 509,

510, 522 (1982).  _See_ Pliler v. Ford, 542 U.S. 225, 227 (2004).  When a federal district court is

presented with a mixed petition, it must "either (1) dismiss the entire petition without prejudice in

order to permit exhaustion of state remedies, or (2) deny the entire petition on the merits."  Moore

v. Schoeman, 288 F.3d 1231, 1235 (10th Cir. 2002) (discussing requirements of § 2254(b) and Rose,

455 U.S. 509).  In "limited circumstances," a federal court may stay a mixed petition pending

exhaustion of state court remedies.  Rhines v. Weber, 544 U.S. 269 (2005).  However, abeyance is

10

appropriate only if the petitioner demonstrates good cause for her failure to exhaust, her unexhausted claims are potentially meritorious and there is no indication that she engaged in intentionally dilatory litigation tactics.  Id., at 277.

33.     A petitioner's other option is to choose to amend the federal habeas petition by dismissing the unexhausted claims, with the result that an amended federal habeas petition containing only exhausted claims proceeds for resolution.  By doing so, however, a petitioner may likely forego the opportunity to seek federal habeas relief based on the unexhausted claims, even if she later exhausts them in state court.  See Hamilton v. Sirmons, 2008 WL 5378324 at *3 (W.D. Okla. Dec. 19, 2008).  This is true because even if the petitioner returns to state court and exhausts the unexhausted claims, the one-year statute of limitations, 28 U.S.C. § 2244(d)(1)(A), will bar the petitioner from bringing the later exhausted claims back to federal court.  The one-year limitations period is not tolled during the time in which a federal habeas petition is pending in a federal district court.  Duncan v. Walker, 533 U.S. 167, 181-82 (2001); York v. Galetka, 314 F.3d 522, 524 (10th Cir. 2003).  Although Henning timely filed the instant petition on March 26, 2008, the one-year limitation period will have expired by the time Henning attempts to raise the unexhausted claims to state court and subsequently attempts to re-file them in a federal habeas proceeding.[7]

34.     Strict enforcement of the exhaustion requirement encourages habeas petitioners to exhaust all of their claims in state court and to present a single habeas petition to federal court. Rose. 455 U.S. at 520.  In so doing, the district court will be more likely to review all of the claims

---

[7]A significant portion of the one-year limitation period was used up from the date of Henning's state court conviction to the time she completed her state habeas proceedings, even though a number of years were tolled during the pendency of her appeal and state habeas proceedings.  Should Henning now attempt to exhaust the unexhausted claims in state court, it is clear that the one-year limitation period will have run, in view of the time that already elapsed and the 11 months or so that this case has been pending before the federal court.

in a single proceeding and provide a more focused and thorough review.  Id.  The total exhaustion requirement "reinforces the importance of Lundy's "simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court."  Rhines, 544 U.S. at 276-77 (citing Rose v. Lundy, 455 U.S. at 520).  Exhaustion may be waived if "state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions"or if there is an inordinate or unjustifiable delay for which the state is responsible.  Bartone v. United States, 375 U.S. 52, 54, 84 S.Ct. 21 (1963) (per curiam); Lane v. Richards, 957 F.2d 363, 365 (7th Cir.), cert. denied, 113 S.Ct. 127 (1992).

## Analysis

35.      Respondents take two different approaches as to why some of Henning's claims are unexhausted.  They first argue that although Henning filed a state habeas petition, she did not present every claim she raised in the state habeas petition to the New Mexico Supreme Court.  *See* Gonzales v. McKune, 279 F.3d 922, 924 (10th Cir.) ("Claims not included in a petition for discretionary review to the state's highest court are not exhausted . . . .") (internal citations omitted), *cert. denied*, 537 U.S. 838 (2002).  Similarly,  Henning did not present every claim she raised in the New Mexico Supreme Court to this Court in her federal habeas petition.  Even if true, however, Respondents state that Henning "may be foreclosed" from raising such claims on a "second or successive state habeas corpus petition," thereby rendering these unexhausted claims exhausted. [Doc. 13, ¶ 19.]  In support of their position, Respondents cite several New Mexico Supreme Court decisions:  State v. Gillihan, 86 N.M. 439, 440 (1974) and State v. Cranford, 92 N.M. 5, 7 (1978).

36.      The Court is unpersuaded by Respondents' position that Henning may be foreclosed from bringing a second state habeas petition raising claims she did not raise earlier to the New

Mexico Supreme Court or in her state habeas petition.  New Mexico does not impose a statute of limitations on habeas petitioners.  Moreover, "if doubts arise in particular cases as to whether the grounds in a subsequent application are different, they should be resolved in favor of the applicant." State v. Canales, 78 N.M. 429, 431 (1967).

37.     Respondents next argue that even if the claims raised in the federal habeas petition are viewed as exhausted (because Henning cannot raise them now in a "successive" state habeas petition), the federal habeas petition is a mixed petition containing claims that were not raised in either the state habeas petition or the petition for writ of certiorari to the New Mexico Supreme Court.  [Doc. 13, ¶ 20.]  The Court agrees that Henning's federal habeas petition is a mixed petition.

38.     Indeed, in her response to the motion to dismiss, Henning concedes that certain claims were not exhausted, even though the Court does not always agree with the determinations by Respondents or Henning as to which claims were or were not exhausted.  Henning also argues that other claims identified by Respondents as unexhausted were actually exhausted.  [Doc. 15.] Henning further asserts that the motion to dismiss should be denied because of language contained in the State Court's Order denying her state habeas petition.  Thus, according to Henning, it would be futile to require her to attempt to exhaust any claims that may not have been exhausted.  [Doc. 15, p. v.]

39.     The Court's approach to determining exhaustion does not depend on Respondents' view that Henning may be foreclosed from returning to state court to file a "successive" habeas petition in the attempt to fully exhaust unexhausted claims.  Nor is the Court convinced by Henning's position that it would be futile to file another state habeas petition based on language in the State Court's denial of her state habeas petition, to the effect that all issues Henning raised in the

state habeas petition were "essentially the very issues" decided by the [New Mexico] Supreme Court on appeal.  The Court observes that different issues were raised on direct appeal, many of which were not raised in Henning's state habeas petition, and that some of the issues raised in the state habeas petition were not raised on direct appeal.  The two pleadings (direct appeal and state habeas petition) contain significant differences.  Notably, the direct appeal was prepared by counsel and focused attention on inconsistencies in the jury verdicts and challenges to strike jurors by Henning. [Doc. 9, Ex. D, Issue Nos. 2, 3, 7-15.]  The state habeas petition was prepared *pro se*, raising few, if any, issues concerning inconsistent verdicts or juror challenges.  Moreover, because the definition of exhaustion is a question of federal law, federal courts are not bound by a state court determination that a petitioner did or did not present a claim to the sate courts in the manner required by state law. *See, e.g.,* Jennison v. Goldsmith, 940 F.2d 1308 (9th Cir. 1991) (*per curiam*) (rejecting state supreme court's determination that state remedies were exhausted for purposes of federal habeas corpus review)*, implied overruling on other grounds by,* Swoopes v. Sublett, 196 F.3d 1008 (9th Cir. 1999).

40.     The Court observes that it does not view Henning will be foreclosed as a matter of state law from filing a second state habeas petition.  However, if she elects to dismiss the unexhausted claims for purposes of allowing this federal habeas petition to proceed, and then returns to state court exhaust the unexhausted claims, she, most likely, will face a statute of limitations problem should she attempt to return to federal court on any of the dismissed claims.  *See* 28 U.S.C. § 2244(d)(1)(A); Duncan, 533 U.S. at 179.

### Unexhausted and Exhausted Claims

41.     The Court elects not to set out summaries of all of Henning's 219 claims and numerous other claims in the appeal, state habeas petition and petition for writ of certiorari.[8] Instead, the Court examines those claims it determines are not exhausted and discusses, in part, both Respondents' and Henning's analysis of the claims they found are not exhausted, etc.  Of course, both parties are allowed to file objections to the Court's findings.  *See* p. 1., n. 1.  If objections are filed with respect to the Court's findings on unexhausted claims, the Court asks the parties to provide the paragraph number (in this pleading) that the party is challenging, along with the exact cites in the pleading(s) by pleading name(s), docket number(s) (if possible), page number(s) and **line number(s)** to show where claims allegedly were exhausted.  The objections in this case are not an opportunity to provide additional arguments or claims.   Any objections to findings of non-exhaustion should narrowly address why a certain claim was exhausted by providing the appropriate and exact citation to the record, keeping in mind that the claim must be fully and fairly presented to the state court.  The parties are also advised that claims raised by Henning in her petition for writ of certiorari, that were not raised in the state habeas petition or direct appeal, are not considered exhausted for the reason explained *infra* at ¶ 43.  In contrast, if Henning set out a claim in the state habeas petition but failed to expressly argue the claim in her petition for writ of certiorari, it is considered exhausted because Henning attached her entire state habeas petition with exhibits to her petition for writ of certiorari.

---

[8]Respondents' version of those claims is set out in their Memorandum in Support of Motion to Dismiss [Doc. 14] at pp. 13-47.

**Claim I**:  <u>**Denial of Due Process and Fair Trial Based on the Trial Court's Abuse of Discretion**</u>

42.     Henning raised 14 subclaims under Claim I and argues they are all exhausted.  [Doc.

15, p. i.]  Respondents argue that some or all of subclaims 1, 2, 4, 5, 6, 10, 11, 12 and 14 are not

exhausted either because they were not raised in the New Mexico Supreme Court or they were not

raised in either the state habeas petition or the petition for writ of certiorari in the state supreme

court.  [Doc. 13, ¶ 18(a); ¶ 20(a).]

> **A.**     **Unexhausted Claims (Claim I, Denial of Due Process)**

43.     Subclaim 4 is not exhausted.  While Henning argued in her petition for writ of

certiorari that lead detective Nick Gonzalez's testimony should have been excluded because of his

untimely death and Henning's failure to cross-examine him, the Court did not find that claim set out

in the appeal or in the state habeas petition.  The fact that Henning presented the argument in her

petition for writ of certiorari does not mean that the New Mexico Supreme Court considered it.

Absent exceptional circumstances, the Supreme Court will not address claims raised for the first

time in a petition for a writ of certiorari.  *See* <u>United States v. Alvarez Sanchez</u>, 511 U.S. 350, 360

n. 5 (1994) (discussing claims raised in a petition for writ of certiorari to the United States Supreme

Court).

44.     Subclaim 5 (Judge Murdoch allowed the introduction of erroneous evidence and

allowed unethical behavior from prosecutors that resulted in the first Grand Jury being "nollied."

Judge Murdoch was biased towards Henning) is not exhausted.  Henning alleges that Attorney

Mitchell failed to file a motion to dismiss the first Grand Jury testimony because it was nollied [state

habeas petition, p. 42] and that Judge Murdoch allowed introduction of "tampered tape recordings

of Henning and co-defendant's lawyer" (state habeas petition, p. 51).  However, the Court finds that the claim was not fully and fairly presented to state courts for purposes of exhaustion.

45.     Subclaim 8 is not exhausted.  Henning argued that the trial judge did not object to defense counsel's telling the jury that Henning was paranoid schizophrenic when no such diagnosis existed.  The Court did not locate this claim in either the appeal or state habeas petition.

**B.     Exhausted Claims (Claim I, Denial of Due Process)**

46.     With respect to the other claims Respondents assert are not exhausted, the Court concludes that they either were raised on direct appeal or in the state habeas petition.  Certain claims were raised in the state habeas petition but not clearly articulated in the petition for writ of certiorari.  For example, Henning raised the argument that the trial court imposed an unreasonable bond of 2.5 million dollars (subclaim #1) in her state habeas petition (p. 51) but did not specifically make this argument in her petition for writ.  The same is true as to her claim that the state court denied her right to a speedy trial (subclaim #2).  It is raised briefly in the state habeas petition (pp. 39, 53), but not in the petition for writ.[9]  However, since Henning attached her entire state habeas petition as an exhibit to her petition for writ of certiorari, and the New Mexico Supreme Court denied it after consideration, the Court concludes that the New Mexico Supreme Court reviewed the attachments, including all claims asserted in the state habeas petition.  Thus, Subclaims 1 and 2 are exhausted.

47.     Subclaim 6 (trial judge erred in not allowing a change of venue due to negative publicity) is exhausted, (direct appeal #6, state habeas petition, p. 54).

---

[9]The Court recognizes that Henning relies on the same factual bases, at times, for different claims.  For example, she argues that the state or trial judge and defense counsel violated her right to a speedy trial.  For the most part, the Court does not look for "magic words" in determining the issue of exhaustion, but rather, analyzes whether the claim appears to have been fully and fairly presented to the state courts.

48.     Subclaim 10 (Henning denied fair trial because trial judge allowed trial to proceed in "circus-like atmosphere") is exhausted (state habeas petition, pp. 54-55).

49.     Subclaim 11 (trial judge erred in excluding evidence of Allied Van Lines inventory list that would have shown steam/vacuum cleaner at issue was out-of-state at pertinent times) is exhausted (state habeas petition, p. 19; direct appeal, #27).

50.     Subclaim 12 (trial judge erred in admitting a letter from Diazien to Henning that the prosecutor had altered) is exhausted (state habeas petition, p. 19; direct appeal, #22).

51.     Subclaim 14 (trial judge admitted erred in admitting Miller tapes because chain of custody was not established and after the trial the trial judge (Brennan) was represented in his drug case by Miller's attorney) is exhausted (state habeas petition, pp. 19, 37).

**Claim II:      Ineffective Assistance of Counsel**

*Section I (Claim II-IAC):*

52.     Henning separated the ineffective assistance of counsel ("IAC") claim into four sections.  Section one of Claim II contains 57 subclaims (58, since Henning numbered one 22 and another 22.5).  In addition, some of the subclaims contain unnumbered sub-parts.  Respondents assert that subclaims 2, 3, 4, 6(a), 7(a), 8, 10, 12, 13, 15, 16, 17, 19, 20, 22, 22.5, 23, 24, 25, 30, 34, 39, 40, 41, 42, 43, 45, 46, 49, 51, 52, 54, 55, 57 are not exhausted for the same reasons stated above in ¶ 43.  Henning concedes that subclaim 34 is not exhausted.[10]

**A.      Unexhausted Claims (Claim II, IAC, Section I)**

53.     Subclaim 1(a) (defense's failure to file a motion to dismiss all criminal charges against her because of her lack of opportunity to cross-examine lead detective Nick Gonzalez, due

---

[10]It is not always clear whether Henning is referring to the same numbers as referred to by Respondents.  In addition, the Court does not necessarily find that Henning's concessions as to non-exhaustion are always correct.

to his death) is not exhausted.  The claim was not raised in either the appeal or state habeas petition. The state habeas petition alleges Gonzalez fabricated evidence against Henning, but the specific argument regarding trial counsel's failure to file a motion to dismiss based on Henning's inability to confront him was not raised.

54.     Subclaim 3 (denial of right to confront Detective Gonzalez) is unexhausted for the reasons stated above in ¶ 54.

55.     Subclaims 19 and 20 (defense's failure to move to compel state to preserve forensic evidence for independent testing and failure to submit motion to produce blood samples from crime scene for independent testing) are not exhausted.  These claims might be inferred from the state habeas petition, but they are not expressly articulated.  Thus, they were not fully and fairly presented to the state courts.

56.     Subclaim 22.5 (defense investigator met with Henning and said he had received 5000 pieces of evidence the day before trial; apologized for his lackluster performance) was not raised on appeal or in the state habeas petition.  It is not exhausted.

57.     Subclaim 24 (defense failed to preserve issue regarding motion to recuse Judge Brennan) is not exhausted.

58.     Subclaim 27 (defense's failure to present evidence that Henning stated under oath that no one removed her blood by any means and instead relied on Diazien's statement that he removed Henning's blood) is not exhausted.

59.     Subclaim 33 (defense failed to use exhibits, graphs, charts at trial while defense knew the State spent more than $20,000 on one exhibit) is not exhausted.

60.     Subclaim 35 (defense counsel called Henning a paranoid schizophrenic) is not exhausted.

61.     Subclaim 38 (defense's failure to preserve issue for review regarding objections to DNA evidence) is not exhausted.

62.     Subclaims 40 and 41 (defense did not preserve for later a claim that the jury instructions did not conform with the UJI; thus Supreme Court reviewed for fundamental error only) are not exhausted.

63.     Subclaim 42 (defense's inadequate closing argument during which he referred to his horse) is not exhausted.

64.     Subclaim 43 (appellate attorney Susan Roth's alleged statement that Mitchell was "incompetent") is not exhausted but it also does not state a claim.  It is merely the alleged opinion of another attorney.  As it fails to present a claim for review, it need not be exhausted.

65.     Subclaim 49 (defense failed to ask expert regarding vacuum and chain of custody) is not exhausted.  The claim might be inferred from different portions of the state habeas petition but it is not sufficiently articulated.  Thus, it was not fully and fairly presented to the state courts.

66.     Subclaims 51 and 52 (defense counsel was in possession of co-defendant's motion to the State asking for mitochondrial DNA related materials; defense failed to raise objection regarding introduction into court of dozens of DNA tested items under the DNA Criminalities Report dated 9/20/00; and defense failed to preserve this issue for later appellate review) are not exhausted.  While Henning makes many arguments regarding DNA evidence, the state habeas refers to a Scientific Evidence Division report, dated February 21, 2001 and includes a February 8, 2001

letter from the University of North Texas health Science Center.  It is not clear that this claim is exhausted.

67.    Subclaim 57 (defense's failure to discredit prosecution's case theory of a "pitched battle" between Henning and Girly) is not exhausted.   While Henning alleges she received ineffective assistance of counsel regarding the suppression of or challenge to evidence, particularly the evidence of DNA, saliva, blood, and hair, the "case theory" of a "pitched battle" is not found in the state habeas petition or appeal.   Thus, it is not exhausted.

### B.    Exhausted Claims (Claim II, IAC, Section I)

68.    Subclaim 2 (defense counsel allowed State to prevail; did not subject state's case to thorough adversarial review) is exhausted.   Henning alleged in the state habeas petition (attached to the petition for writ) that her defense counsel declined to provide any defense witnesses or experts to challenge the State's experts; defense counsel relied only on the testimony of a hostile witness who was a confirmed liar; defense counsel did not begin interviewing key witnesses until a day before trial and attended no depositions; defense counsel suppressed certain potentially exculpatory evidence; defense counsel failed to thoroughly read the police reports, interview witnesses, file motions or thoroughly cross-examine key prosecution witnesses; defense counsel failed to prepare for the trial and failed to attend a number of hearings, etc. (state habeas petition, pp. 6-7, 16-17, 42-43, 45, 48).

69.    Subclaim 4 (defense denied Henning the right to participate in her own defense despite her requests) is considered exhausted based on Henning's numerous arguments that she made suggestions to defense counsel that were ignored (state habeas petition, pp. 7, 42, 43, 46, 47, 50).

70.     Subclaim 6a (prior attorney Cordle destroyed exculpatory evidence consisting of photographs, etc.) is exhausted (state habeas petition, pp. 38-39).

71.     Subclaim 7a (prior attorney Meyers tried to coerce Henning into entering a plea and in retaliation for her refusal, counsel filed a motion for competency hearing) is exhausted (state habeas petition, p. 40).

72.     Subclaim 8 (prior attorney Meyers destroyed notes Henning gave counsel detailing the case, etc.) is exhausted (state habeas petition, p. 40).

73.     Subclaim 10 (all defense attorneys failed to perform due diligence in preparation for a death-qualified trial) is exhausted (state habeas petition, pp. 17, 38-50).

74.     Subclaim 12 (defense failed to call witnesses) is exhausted (state habeas petition, pp. 5-6).

75.     Subclaim 13 (defense failed to seek adequate funding for the defense, particularly with regard to DNA testing and expert testimony) is exhausted (state habeas petition, pp. 6, 43, 48).

76.     Subclaim 15 (defense failed to file a motion for a bill of particulars regarding perjury charges as requested by Henning) is exhausted (appeal #29, state habeas petition, p. 48, appellate brief, p. 42).  The perjury convictions were reversed based on appeal.

77.     Subclaim 16 (defense failed to file motion for gag order and for change of venue) is exhausted (state habeas petition, p. 8).

78.     Subclaim 17 (defense failed to obtain mitigation specialist to save the state money) is exhausted (state habeas petition, p. 48).

79.     Subclaim 22 (defense failed inform Henning she would have no expert witnesses until days before trial) is exhausted (state habeas petition, pp. 16, 43)

22

80.     Subclaim 23 (defense failed to request recusal of trial judge Brennan for bias and his comments to press that Henning was guilty is exhausted (state habeas petition, pp. 8, 52-53).

81.     Subclaim 25 (defense had conflict of interest because he was more interested in maintaining his relationship with the State as a contract defense counsel than with defending Henning) is exhausted (state habeas petition, pp. 41, 46, 48).

82.     Subclaim 30 (defense undermined Henning's defense by portraying key witness Diazien as a "con man") is exhausted (state habeas petition, pp. 49, 56).  Henning did not expressly alleged the use of the phrase "con man" by defense counsel, but she fairly presented the claim to state courts.

83.     Subclaim 34 (defense failed to review the evidence before trial and was unable to effectively impeach witnesses) is exhausted (state habeas petition, pp. 6, 7, 17, 48).

84.     Subclaim 37 (defense failed to raise objections to many errors in DNA report, dated 9/20/00) is exhausted (state habeas petition, pp. 8-9, 16).

85.     Subclaim 39 (defense failed to object to trial judge's comment that Henning was "mentally ill" when there was no supporting diagnosis) is exhausted (state habeas petition, pp. 8, 53).

86.     Subclaim 45 (defense failed to present evidence that Univ. of North Texas Health Science Lab was experiencing accreditation problems at the time it conducted DNA testing in this case) is exhausted (state habeas petition, p. 14).

87.     Subclaim 46 (defense failed to impeach Amy Smuts regarding DNA testing) is exhausted (state habeas petition, p. 14).

88.     Subclaim 54 (prior attorney Cordle was given photographs of Henning's house showing numerous drop cloths that Cordle destroyed) is exhausted (state habeas petition, p. 39).

89.     Subclaim 55 (defense failed to raise issue of destruction of photographs by Cordle and failed to present evidence of other drop cloths) is exhausted (state habeas petition, p. 39).

### Section II (Claim II-IAC)

90.     Henning set out 18 subclaims under Section II of her IAC claim.  Respondents argue that the following subclaims are not exhausted:  7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18.  Henning concedes that subclaims 9 and 12 are not exhausted.

### A.     Unexhausted Claims (Claim II, IAC, Section II)

91.     Subclaim 8 (defense failed to summon Lt. Guenther despite his name appearing on many documents) is not exhausted.  The Court saw no mention of Lt. Guenther in the state habeas petition or the direct appeal.  The fact that Lt. Guenther's name is contained in an exhibit does not fully and fairly present this claim to the state courts.

92.     Subclaim 9 (defense failed to object to the trial judge excluding key exculpatory evidence in the form of an Allied Van Lines inventory listing a steam vacuum cleaner as being out of state) is not exhausted.  Henning agrees it was not exhausted.  On appeal and in the state habeas petition, she argued that the court erred by precluding admission of this evidence, but she made no argument that her attorneys failed to object to the trial court's ruling.  Indeed, the appeal states that defense counsel attempted to get the evidence admitted but that the court found no foundation was established.

93.     Subclaim 10 (defense failed to summon an employee from Allied Van Lines to testify and failed to preserve the issue for review) is not exhausted.

94.     Subclaim 12 (defense failed to preserve issue #11 for review) (see below) is not exhausted.  Henning concedes it is not exhausted.

95.     Subclaim 14 (defense failed to impeach State witness Ron Wilkins; failed to conduct background research into his prior criminal arrests) is not exhausted.  The Court found no mention of Wilkins in the pertinent state pleadings.

96.     Subclaim 15 (defense failed to interview the many witnesses who entered Girly's apartment and whether any owned cats, who might have contaminated the scene) is not exhausted.

97.     Subclaim 18 (defense failed to go to crime lab to view evidence in advance and discuss defense strategy with Henning; if he had, he could have discredited evidence presented at Ogden hearing) is not exhausted.  While Henning "throws the book" at trial counsel for his alleged lack of preparation, failure to interview witnesses, failure to file motions, failure to obtain expert or defense witnesses, failure to impeach the State's witnesses, and a myriad of other deficiencies and conflicts, Henning did not fully and fairly present the crime lab claim to the state courts.

## B.     Exhausted Claims (Claim II, IAC, Section II)

98.     Subclaim 7 (defense failed to properly notify deposition of Detective Rocky Stone or to summon him as a trial witness) is exhausted.  In the state habeas petition, Henning argued the following:

> He [defense counsel] purposefully and intentionally suppresses the Det. Rocky Stone Report despite Petitioner pleading with him to disclose it at the Ogden Hearing to prevent a death qualified jury which is conviction prone.  By suppressing the trace evidence report which refuted the "pink button" theory of Det. Nick Gonzalez (now deceased), he allowed the false evidence to be an enhancement factor for a death penalty trial.

(state habeas petition, p. 42; *see also* pp. 7-8, 18).   While Henning did not use the words "deposition" or "trial witness," it is sufficiently clear that she sought the admission of Stone's testimony.  *See* Carter v. Bell, 218 F.3d 581, 606-07 (6th Cir. 2000) ("We do not require word-for-word replication of the state claim in the habeas corpus petition in order to address the merits therein, only that the petitioner 'fairly present' the substance of . . . [the] claims to the state courts.") The Court concludes that the claim was fairly presented to the state court and is exhausted.

99.    Subclaim 11 (defense failed to object to admission of gold CDs in connection to the tampering with evidence charge) is exhausted.  Henning argued in the state habeas petition that the trial court allowed the admission of the "gold disks file dated 1996 and containing extensive real estate listings of property" including a listing of Girly's apartment (state habeas petition, pp. 19-20).  She then argued that the discs were created two to three years before Girly had moved into the apartment complex.  "Mitchell elicited little objection to the 'unfairness' of the one-sided evidence, never fully revealed to the jury the real estate listings numbered dozens and dozens."  The claim was fairly presented to the state court.  However, the related claim that defense counsel failed to preserve the issue for review (subclaim 12) is not clearly exhausted.  Moreover, Henning concedes subclaim 12 is not exhausted (see above).

100.    Subclaim 13 (defense's failure to impeach Atlas Resources staff as to her [Henning's] work performance; defense failed to subpoena "one document" from Henning's employer to support her defense; such information would have shown she was using the bank where Girly worked before Henning met Diazien) is exhausted (state habeas petition, pp. 44-45).

101.    Subclaim 16 (Girly's assets and money wired to Malaysia suggesting alternative for his disappearance) is exhausted (state habeas petition, pp. 32-33).

102. Subclaim 17 (defense failed to tell jury about falsified immigration documents found in Girly's apartment and a harassment log indicating she was a potential victim to be notified when a felon in Colorado was to be released) is exhausted (state habeas petition, p. 32). Although Henning does not expressly indicate her attorneys failed to bring this information before a jury, she was making allegations about the prosecution and defense ("Defense counsel reveals nothing at trial.")

### Section III (Claim II-IAC)

103. Henning sets out 35 subclaims under Section III of her IAC claim. Respondents argue that subclaims 1, 4, 5, 6, 7, 9, 10, 11, 12, 15, 16, 18, 19, 20, 23, 24, 25, 26, 31, 34, and part of 35. are not exhausted. Henning concedes that subclaims 16, 31, and 34 are not exhausted.

### A.    Unexhausted Claims (Count II, IAC, Section III)

104. Subclaims 5 and 6 (defense's failure to request "voice print" of taped conversation between Miller and Henning and failure to request transcript of the tape) are not exhausted. The Court did not locate references to such claims in the state court pleadings with respect to defense counsel's failure to make these requests.

105. Subclaim 10 (defense's failure to present evidence to establish other people had been in Henning's garage and car prior to Girly's disappearance and could have contaminated the evidence or scene) is not exhausted.

106. Subclaim 11 (defense's failure to summon Officer Gracyk to testify what he heard Miller say at a soccer game regarding having given Diazien a gun) is not exhausted. Henning poses this question in her state habeas petition: "If Miller was solicited by Hossencofft to kill Chew, then the real question is why would Miller tell absolutely everyone including complete strangers at soccer

matches, yet at no time did he go to police headquarters?"  This hypothetical question is insufficient to adequately or fairly present the claim to state courts.

107.    Subclaim 15 (duct tape) is not exhausted.  The court located no references in state court pleadings regarding Henning's position that her attorneys failed to impeach Detective Fox regarding the condition of the duct tape that was found or that it was found in a "figure 8," suggesting "bondage."  There was a general claim that conflicting testimony regarding the condition of the duct tape was admitted, but this is insufficient to show that Henning's specific claim (as described above) was fully and fairly presented to the state courts (state habeas petition, p. 52).

108.    Subclaim 16 (wallet found near Tramway) is not exhausted.  Henning concedes it is not exhausted.

109.    Subclaim 23 (defense's failure to cross-examine State's witness regarding  a change in testimony from Grand Jury to trial regarding how many drops of blood were found on Girly's carpet) is not exhausted.

110.    Subclaim 25 (defense's failure to ask State's witnesses whether they contacted Voice Stream to ask them to triangulate Girly's cell phone to locate her and if not, why not) is not exhausted.  Although Henning discusses the possibility of "triangulation," she did not fully and fairly present the claim to the state courts (state habeas petition, p. 34).

111.    Subclaim 28 (defense's failure to tell jury the police impounded Henning's Honda a second time three weeks after it was sold to someone else regarding broken chain of custody) is not exhausted.

112.    Subclaim 31 (defense's failure to introduce at trial a commission earned by R. Michael Harvey when he sold Henning's car to Det. Fox's mother) is not exhausted.  Henning concedes it is not exhausted.

113.    Subclaim 32 (defense's failure to bring forth evidence to the jury that the State or some State witnesses did not believe in Henning's guilt) is not exhausted.

114.    Subclaim 34 (defense's failure to use an email from Gary Wagner, an investigator for defense counsel Meyers; evidence turned defense counsel against defendant and caused Meyers to insist on a plea and file a motion for a competency hearing) is not exhausted.  Henning agrees it is not exhausted.

### B.    Exhausted Claims (Claim II, IAC, Section III)

115.    Subclaim 1 (defense's failure to bring out Miller's questions of police regarding cadaver dogs' abilities) is exhausted (state habeas petition, p. 32 top).

116.    Subclaim 4 (defense's failure to disclose to Henning that a tape recorded conversation between Miller and Henning had re-surfaced, thereby providing no notice to Henning before the tape's admission at trial) is exhausted (state habeas petition, p. 37).

117.    Subclaim 7 (defense's failure to present evidence that Miller stalked Henning and was obsessed with Hossencofft women) is exhausted (state habeas petition, pp. 29-30).

118.    Subclaim 9 (defense's failure to call Miller to testify, resulting in the jury being denied information about Miler such as his womanizing, stalking, membership in a militia, insurance fraud, tax fraud, knowledge of a shortcut to Magdalena, weapons, prior arrest record, etc.) is exhausted (state habeas petition, pp. 25-32).  Henning states all of this information was provided to

defense counsel who "rolls over like a dying dog" and never reveals any of this exculpatory information.

119.    Subclaim 12 (defense's failure to present evidence of Miller's relationship with the prosecution and efforts to help the prosecution, e.g., acting as a guide for the police in the Magdalena area yet denying police DNA samples) is exhausted (state habeas petition, pp. 27-32).

120.    Subclaim 18 and 19 (defense's failure to return Henning her copy of Det. Fox's handwritten notes after trial and through the years and failure to present that evidence to a jury) is exhausted (state habeas petition, p. 12).

121.    Subclaim 20 (defense's failure to cross examine Det. Fox regarding Henning's blood and the collection of that blood before blood drops were found) is exhausted (state habeas petition, p. 47.)

122.    Subclaim 24 (defense's failure to cross-examine Officer Portwine regarding his report about a witness (De Vargas) who said she saw Girly at the mall two days after her disappearance) is exhausted (state habeas petition, pp. 6, 7, 24, 25, 35).

123.    Subclaim 26 (defense's failure to cross-examine detectives about the possible falsified immigration papers found in Girly's apartment as they may have related to her disappearance) is exhausted (state habeas petition, pp. 32-33).

124.    Subclaim 35 (defense's failure to present DNA expert testimony to discredit a DNA analysis of two saliva samples) is exhausted.  Henning repeatedly alleges that no experts were used to contradict the State's experts with respect to much of the DNA evidence introduced (state habeas petition, pp. 10, 15-16, 43).

### *Section IV (Claim II-IAC)*

125.    Henning sets out 33 subclaims under Section IV of her IAC claim.  Respondents argue that subclaims 3, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 25, 26, 30, 31, 32 and 33 are not exhausted.  Henning concedes that subclaims 6, 23 and 24 are not exhausted.

### A.    Unexhausted Claims (Claim II, IAC, Section IV)

126.    Subclaim 2 (defense's failure to object to the admission of a taped recording between Henning and divorce attorney Kelley; Henning contended tape was altered and voice and statements of Kelley were changed or deleted) is not exhausted.  While Henning make a number of allegations regarding Kelley's testimony and defense counsel's failure to impeach, she does not specifically raise this issue to the state courts.  (*See* state habeas petition, pp. 20-21, 23.)

127.    Subclaims 3 and 4 (defense's failure to request voiceprint analysis of Kelley tape recording and to preserve issue for further review) are unexhausted.

128.    Subclaims 5, 6 and 7 (defense's failure to impeach testimony by Dickey and Fox regarding cat hair from Henning's cat being found on tarp, failure to preserve issue for review, and failure to properly impeach State witnesses by providing a biologist to discredit testimony) are unexhausted.  Henning agrees that subclaim 6 is unexhausted.

129.    Subclaims 10 and 11 (defense's failure to impeach expert witness regarding trace evidence report, dated 6/27/01 and failure to preserve issue for review) are unexhausted.  Henning makes a number of arguments regarding defense counsel's failure to challenge evidence, but this specific claim was not fully and fairly presented to the state courts.

130.    Subclaim 14 (defense's failure to preserve issue for appeal regarding subclaim #13) is not exhausted.

31

131.    Subclaim 18 (defense's failure to preserve issue for appeal regarding subclaim #17) is not exhausted.

132.    Subclaim 19 (defense's failure to file motion for dismissal based on Henning's constitutional right to confront lead detective Gonzalez who had died) is not exhausted.

133.    Subclaims 23 and 24 (defense's failure to impeach Dickey testimony regarding steam cleaner/vacuum and "fact" that it was not in the state at the time it supposedly was used to clean Girly's carpet; and failure to preserve issue for review) are not exhausted. While Henning raises this claim, it was narrowed to trial court error rather than ineffective assistance of counsel (state habeas petition, at pp. 19, 52). Henning agrees that subclaim 24 is not exhausted.

134.    Subclaim 26 (defense's failure to preserve issue for review regarding subclaim #25) is not exhausted.

135.    Subclaim 33 (defense's failure to inform jury that blood drops found at Girly's apartment were in a straight line, thereby disputing State's theory of a "pitched battle") is not exhausted.

**B.    Exhausted Claims (Claim II, IAC, Section IV)**

136.    Subclaim 12 (defense's failure to impeach Dickey regarding head hair being initially identified as Miller's and then later positively identified as Henning's when the hair was easily distinguishable) is exhausted (state habeas petition, p. 13, 14).

137.    Subclaim 13 (defense's failure to impeach Dickey testimony as to "mixed wipestain" with respect to it being two pieces of fabric instead of one) is exhausted (state habeas petition, pp. 10, 39).

138.    Subclaims 15, 16, and 17 (defense's failure to object to mixed wipestain as being positively identified as Henning's despite notes of Dickey suggesting there were not conclusive findings, failure to impeach DNA findings through defense expert, failure to properly impeach Dickey) are exhausted (state habeas petition, pp. 6, 7, 8, 9, 10, 16).

139.    Subclaims 25 (defense's failure to negate prosecutor's "misrepresentations" that the forensic report came back on 9/2/99, five days after Henning denied ever being in Girly's apartment, by showing that no DNA testing was done before 9/20/00) is exhausted (state habeas petition, pp. 5, 11-12, 32, 36).

140.    Subclaim 30 (defense's failure to secure adequate funds for defense or obtain funds to hire expert when the case was the longest and most expensive DNA case in State's history, in contrast to Diazien's attorney's ability to secure more defense funds for DNA testing) is exhausted (sate habeas petition, pp. 6, 16, 43, 48).

141.    Subclaim 31 (defense's failure to inform jury about prior defense attorney Meyers' motion to compel disclosure of Grand Jury exhibit 48 in order to impeach credibility of State's experts based on erroneous, misleading information in Ex. 48) is exhausted.  While Henning did not specifically link the claim to attorney Meyers in her state habeas petition, she argued defense counsel failed to disclose exhibit 48 which would have shown the State was lying about the evidence and that no DNA testing had ever been done, (state habeas petition, p. 9).

142.    Subclaim 32 (defense's failure to present to the jury the fact that the first grand jury had been "nollied" due to serious ethical violations on the part of the State) is exhausted (state habeas petition, pp. 8, 42).

**Claim III:**     **Prosecutorial Misconduct**

143.    Henning separated the prosecutorial misconduct claim into three sections.  Section one of Claim III contains 20 subclaims.  In addition, some of the subclaims contain unnumbered sub-parts. Respondents assert that subclaims 7, 9, 13, 14, 15, 16, 18, and 19 were not exhausted for the same reasons stated above in ¶ 42.  Henning argues all subclaims of Claim III, Section I are exhausted.

*Section I (Claim III, Prosecutorial Misconduct)*

**A.     Unexhausted Claims (Claim III, Prosecutorial Misconduct, Section I)**

144.    Subclaim 9 (comparison of APD's saliva swab DNA test conducted on Henning in 1999 conflicted with a 2002 swab test, thereby indicating contamination of evidence by State) is not exhausted.  Henning argues about the comparison of the "saliva standard" (state habeas petition, pp. 15-16), but this exact claim is not fully and fairly presented to state courts.

145.    Subclaim 10 (complains of sloppy science and poor procedures in collecting evidence regarding a gun that was found with DNA of an unknown source; she speaks of two guns, one in pristine packaging that was tested and one from South Carolina with blood on it that was not tested) is not exhausted.

146.    Subclaim 11 (complains of cross-contamination of evidence as to Jane Doe skeletal remains and brain matter that had nothing to do with the case) is not exhausted.

147.    Subclaim 15 (Gonzalez's grand jury testimony was that the blood droplets were round and small and in a straight line which refuted state's theory of a "pitched battle" between Girly and Henning in Girly's apartment) is not exhausted.

34

148.     Subclaim 19 (state witnesses' testimony regarding duct tape being found either in a "wad" or in a "figure 8" which might indicate bondage) is not exhausted.  The allegations at p. 52 of the state habeas petition are too general to have fully and fairly presented the claim to the state courts.

**B.     Exhausted Claims (Claim III, Prosecutorial Misconduct, Section I)**

149.     Subclaim 7 (prosecution relied on DNA testing of blood wipestain from Girly's sofa although there was only one custody tag for two fabric samples from sofa) is exhausted (state habeas petition, pp. 9-10).

150.     Subclaim 13 (Detective Gonzalez improperly handled evidence by rolling up carpet from Girly's apartment and keeping it in his vehicle unsecured and without protective covering for several months) is exhausted (state habeas petition, pp. 11-12, 15, 36).

151.     Subclaim 14 (police improperly handled evidence; detectives retained evidence in their personal possession for months before delivering it to the lab for testing) is exhausted (state habeas petition, pp. 5, 11-12, 15, 36, 47).

152.     Subclaim 16 (APD impounded Henning's car three weeks after it was sold to another party and still used the pink button as evidence that was collected from car) is exhausted (state habeas petition, pp. 18).  Although this claim may not have been as clearly presented to the state courts as it could have been, Henning alleged that Det. Gonzalez found the pink button later while his report did not reveal a button was discovered when the vehicle had been impounded three months earlier.  Thus, the essence of the claim was fully and fairly presented to the state courts.

153.     Subclaim 18 (prosecutor made public allegations via the news media that Henning was a home wrecker, hit woman, murderer, assassin and cannibal) is exhausted (state habeas petition, at pp. 2, 4-5, 36, 50, 54-55, page from Ex. 58 (attached to state habeas petition)).

### *Section II (Claim III, Prosecutorial Misconduct)*

154.     Henning sets out approximately 20 subclaims under Section II of her prosecutorial misconduct claim.  Respondents argue that subclaims 6 (part of it), 12 (part of it), 13 (part of it), 15B, 16, 17, 18, 19, and 20 are not exhausted.  Henning concedes that subclaims  15(B), 17 and 20 are not exhausted.

### A.     Unexhausted Claims (Claim III, Prosecutorial Misconduct, Section II)

155.     Subclaim 12 (part of it) (prosecutor presented false testimony to first Grand Jury regarding the three blood drops being in a straight line vs. theory of "pitched battle" between Henning and Girly) is not exhausted.

156.     Subclaim 13 (part of it) (prosecutor presented inconsistent testimony regarding three drops of blood found on Girly's carpet vs. six drops of blood found per DNA testing report; and Tarrant County Crime Lab report indicated Henning's saliva sample from 1999 did not match her saliva sample from 2002) is not exhausted.

157.     Subclaim 15(B) (prosecutor presented fabricated testimony from Det. Fox at the Grand Jury that Diazien was arranging for an insanity plea) is not exhausted.  Henning agrees that subclaim 15(B) is not exhausted.

158.     Subclaim 16 (prosecutor threatened Henning during the Grand Jury, telling her to change her timeline of the night of 9/9/99  to match Det. Fox's testimony but she refused) is not exhausted.

159.     Subclaim 17 (prosecutor presented false testimony to Grand Jury by Det. Johnson that it was confirmed that human flesh was found on the sword taken from Henning's garage ceiling) is not exhausted.  Henning raised a claim regarding admission of the sword on direct appeal (#21) but did not argue that there was evidence of human flesh found on the sword as opposed to blood.  Thus, Subclaim 17 was not fully and fairly presented to the state courts.  Henning concedes subclaim 17 is not exhausted.

160.     Subclaim 20 (state presented false testimony about the steam/vacuum cleaner when Allied Van Lines inventory established that it was not in the state at the time it was purportedly used to clean blood from Girly's carpet) is not exhausted.  While this claim is raised on appeal and in the state habeas petition with respect to trial court error, it is not raised under prosecutorial misconduct (appeal, #27; state habeas petition, p. 19).  Thus, it was not fully and fairly presented to the state courts.  Henning concedes that subclaim 20 is not exhausted.

##### B.     Exhausted Claims (Claim III, Prosecutorial Misconduct, Section II)

161.     Subclaim 6 (part of it) (prosecutor purposely and knowingly submitted a hair sample for DNA testing on a broken glass specimen-slide) is exhausted (state habeas petition, pp. 10-11).

162.     Subclaim 18 (state released a statement to the media that Henning was a cannibal) is exhausted (state habeas petition, p. 54).

163.     Subclaim 19 (prosecutor screamed at defense counsel during trial about the handling of the carpet with care when defense counsel stepped on the carpet) is exhausted (state habeas petition, p. 56).

### Section III (Claim III, Prosecutorial Misconduct)

164.    Henning sets out three subclaims under Section III of her prosecutorial misconduct claim.  Respondents argue that part of subclaim 2 is not exhausted.  Henning disagrees.

### A.    Unexhausted Claims (Claim III, Prosecutorial Misconduct, Section III)

165.    Subclaim 2 (part of it) (prosecutor may have threatened Ms. de Vargas, the woman who reported to police that she saw Girly in the mall two days after her disappearance, to prevent her from testifying) is not exhausted.  While Henning raises issues concerning the failure to call Ms. de Vargas as a witness and failure to interview her, etc., there was no accusation in the state habeas petition or appeal that the State threatened Ms. de Vargas.

**Claim IV**:    <u>**Sufficiency of the Evidence**</u>

166.    Henning brings 18 subclaims under Claim IV, numbered "a" through "r." Respondents argue that subclaims c, e, g, h, k, o and parts of r are not exhausted.  Henning agrees that  subclaim g is not exhausted.

### A.    Unexhausted Claims (Claim IV, Sufficiency of the Evidence)

167.    Subclaim c (two saliva samples taken for Henning's DNA, one in 1999 and one in 2002, matched each other but did not match the APD test of the blood from Girly's carpet) is not exhausted.  Although Henning raises arguments regarding the testing of saliva, subclaim c was not fully and fairly presented to the state courts.

168.    Subclaim e (Henning presented receipts that established she could not have been at Girly's apartment or in Magdalena at the time of the crimes) is not exhausted.

169.    Subclaim g (cat hairs that were supposedly matched to Henning's cat were from an extinct cat) is not exhausted.  Henning agrees.

170.    Subclaim h (trace evidence of art-sand and glitter found at Girly's apartment could have been transferred by police investigators who searched Henning's house) is not exhausted.

171.    Subclaim k (Attorney Kelley's testimony that Henning had cuts on her hands was false, and Kelley admitted she was coerced into testifying for the State) is not exhausted.  Henning makes a number of more general allegations concerning Kelley's testimony and the later letter written by Kelley to Henning, yet Henning does not allege in the state habeas petition or appeal that Kelley specifically testified that Henning had cuts on her hands, etc.  Thus, the claim was not fully and fairly presented to state courts.

172.    Subclaim o (State's theory of a "pitched battle" between Henning and Girly was not credible) is not exhausted.

173.    Subclaim r (part of it) (evidence no presented that might have established Henning's innocence, in the form of the absence of a body, absence of petitioner's fingerprints in Girly's apartment, in her car or in her personal effects) is not exhausted.  While one might be able to piece together some of these claims from Henning's lengthy state habeas petition, this part of subclaim r is was not fully and fairly presented to the state courts.

174.    Subclaim r (part of it) (receipts would have established Henning's alibi) is not exhausted.

175.     Subclaim r (part of it) (tarp found near Magdalena was contaminated by police placing it in contact with a drop cloth from Henning's house, thereby allowing for the transfer of trace evidence; and there was no evidence linking Henning to Girly) is not exhausted.

**B.      Exhausted Claims (Claim IV, Sufficiency of the Evidence)**

176.     Subclaim p (part of it) (chain of custody of physical evidence was not established because the custody tags were not consistent with testimony; and police had an opportunity to contaminate and tamper with physical evidence because Det. Gonzalez held onto evidence for some months before delivering it to the lab for testing in 1999) is exhausted (state habeas petition, pp. 2, 5, 9, 10, 11, 12, 15, 36, 37, 47).  Henning's many allegations concerning the collection and handling of evidence are sufficient to show that Subclaim p is exhausted.

177.     Subclaim r (part of it) (evidence not presented that might have established Henning's innocence, particularly that of Ms. De Vargas who told police that she saw Girly at the mall, several days after Girly disappeared) is exhausted (state habeas petition, pp. 6, 7, 24-25).

180.     Subclaim r (part of it) (State's DNA evidence was not credible) is exhausted.  Henning repeatedly discussed inconsistencies in the State's DNA evidence in her state habeas petition.

181.     Subclaim r (part of it) (defense prevented from doing its own DNA testing of physical evidence because the State's experts consumed the evidence during their testing) is exhausted (state habeas petition, p. 5).

**Conclusion**

182.    The Court concludes that Henning's federal habeas petition is a mixed petition,

containing both exhausted and unexhausted claims.

183.    The unexhausted claims are as follows:

**Claim I (Denial of Due Process): Subclaims 4, 5, 8;**

**Claim II (IAC) Section I: Subclaims:  1a, 3, 19, 20, 22.5, 24, 27, 33, 35, 38, 40, 41, 42, [43],[11] 49, 51, 52, 57;**

**Claim II (IAC) Section II: Subclaims:  8, 9, 10, 12, 14, 15, 18;**

**Claim II (IAC) Section III: Subclaims:  5, 6, 10, 11, 15, 16, 23, 25, 28, 31, 32, 34;**

**Claim II (IAC) Section IV: Subclaims:  2, 3, 4, 5, 6, 7, 10, 11, 14, 18, 19, 23, 24, 26, 33;**

**Claim III (Prosecutorial Misconduct) Section I: Subclaims:  9, 10, 11, 15, 19;**

**Claim III (Prosecutorial Misconduct) Section II: Subclaims:  12(part); 13(part); 15B, 16, 17, 20;**

**Claim III (Prosecutorial Misconduct) Section III: Subclaim: 2(part); and**

**Claim IV (Sufficiency of the Evidence): Subclaims: c, e, g, h, k, o, r(parts).**

---

[11]There is no need to exhaust this "claim," as it is merely argument, rather than a cognizable claim.

184.     The following claims are deemed to have been <u>exhausted</u>:

**Claim I (Denial of Due Process): Subclaims:  1, 2, 3, 6, 7, 9, 10, 11, 12, 13, 14;**

**Claim II (IAC) Section I: Subclaims:  1(part), 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 34, 36, 37, 39, 44, 45, 46, 47, 48, 50, 53, 54, 55, 56;**

**Claim II (IAC) Section II: Subclaims:  1, 2, 3, 4, 5, 6, 7, 11, 13, 16, 17;**

**Claim II (IAC) Section III: Subclaims:  1, 2, 3, 4, 7, 8, 9, 12, 13, 14, 17, 18, 19, 20, 21, 22, 24, 26, 27, 29, 30, 33, 35;**

**Claim II (IAC) Section IV: Subclaims:  1, 8, 9, 12, 13, 15, 16, 17, 20, 21, 22, 25, 27, 28, 29, 30, 31, 32;**

**Claim III (Prosecutorial Misconduct) Section I: Subclaims:  1, 2, 3, 4, 5, 6, 7, 8, 12, 13, 14, 16, 17, 18, 20;**

**Claim III (Prosecutorial Misconduct) Section II: Subclaims:  1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12(part), 13(part), 14, 15A, 18, 19;**

**Claim III (Prosecutorial Misconduct) Section III: Subclaim: 1, 2(part); and**

**Claim IV (Sufficiency of the Evidence): Subclaims:  a, b, d, f, i, j, l, m, n, p, q, r (parts).**

185.     Because the petition is a mixed petition, the Court must either allow the petitioner to (1) return to state court to exhaust her claims (dismissal of petition without prejudice), or (2) amend and resubmit the federal habeas petition to present only the exhausted claims to federal district court.  <u>Moore</u>, 288 F.3d at 1233-34 (*citing* <u>Rose</u>, 455 U.S. at 510).  The only exception to these options might allow the Court to deny the entire habeas petition on its merits after finding the petitioner raised no colorable federal claim.  In other words, a meritless petition can be denied without reference to the exhaustion issue.  <u>Id.</u> at 1234 (internal citation omitted).  A hybrid approach,

however, dismissing one claim on the merits and the other without prejudice in a mixed petition is not permitted. Id. at 1235-36.  Moreover, the Court will not hold the case in abeyance because there has been no showing of good cause to excuse the failure to exhaust all claims presented in the federal petition. *See* Rhines, 544 U.S. at 277-78 (abeyance available only in limited circumstances).

186.    Henning may elect to dismiss the unexhausted claims listed in ¶ 181 and proceed with the remaining exhausted claims, as listed in ¶ 182.  Within 20 days of the entry of an Order adopting these Findings and Recommended Disposition, Henning may amend her federal habeas petition to present only the exhausted claims set forth above in ¶ 182.  Should Henning elect to file an amended habeas petition, the exhausted claims should be clearly set forth and numbered.  None of the unexhausted claims listed above in § 181 should be included.  The Court will then proceed to make findings and recommendations as to the amended petition containing exhausted claims.

187.    Henning is again advised that if she decides to try exhaust the unexhausted claims in state court, she may be precluded from later attempting to re-present those claims in a federal habeas petition based on the one-year time bar.  In other words, she may likely forego the opportunity to seek federal habeas relief on those unexhausted claims, even if she proceeds to later exhaust them.

## **Recommended Disposition**

188.    That Respondents' Motion to Dismiss be GRANTED in part and DENIED in part, as described above, with the result that Henning's petition be dismissed, in its entirety, without prejudice, unless within twenty (20) days of the entry of any Order Adopting these Findings and

Recommended Disposition, Henning chooses to and does amend her petition to only present her exhausted claims.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge