## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LINDA HENNING,

        Petitioner,

v.                                      No. CIV 08-328 RB/LFG

ALLEN COOPER, Warden,
and the ATTORNEY GENERAL
OF THE STATE OF NEW MEXICO,

        Respondents.

## ORDER AMENDING, IN PART, AND ADOPTING MAGISTRATE JUDGE'S AMENDED FINDINGS AND RECOMMENDED DISPOSITION AS TO ISSUES OF EXHAUSTION

### I.    INTRODUCTION

THIS MATTER is before the Court on the Magistrate Judge's Findings and Recommended Disposition, filed February 13, 2009 [Doc. No. 18], recommending that Respondents' Motion to Dismiss, based on grounds of non-exhaustion, be granted in part and denied in part.  The Magistrate Judge concluded that Henning's mixed petition, containing both exhausted and unexhausted claims, should be dismissed in its entirety, without prejudice, unless Petitioner Linda Henning (Ms. Henning) amended her federal habeas petition to present only those claims that were exhausted. [Doc. No. 18, p. 43.]

### II.    GENERAL OBJECTIONS TO MAGISTRATE'S RECOMMENDATIONS

On March 3, 2009, Ms. Henning filed objections to the Magistrate Judge's findings and recommended disposition. [Doc. No. 20.]  She also filed a Notice stating that she would submit a

1

revised § 2254 petition, containing exhausted claims only, after final resolution of her objections. [Doc. No. 19.][1] Respondents did not file objections and the time for doing so has elapsed. The Court conducted a *de novo* review of those portions of the Magistrate Judge's findings and recommended disposition to which Ms. Henning objects. The Court adopts the Magistrate Judge's findings and recommended disposition in large part, but also amends the recommended disposition in part as discussed below.

Ms. Henning sets forth a number of preliminary objections before addressing the specific findings of the Magistrate Judge. For example, she argues that a *pro se* litigant's pleadings must be construed liberally in comparison to pleadings filed by an attorney and that she should be given the benefit of the doubt with respect to questions of exhaustion. Ms. Henning is correct that a court must liberally construe pleadings filed by *pro se* litigants. Haines v. Kerner, 404 U.S. 519, 520 (1972; United States v. Mora, 293 F.3d 1213, 1216 (10th Cir.), *cert. denied,* 537 U.S. 961 (2002). But a liberal construction of pleadings does not excuse a litigant's compliance with procedural obligations nor is the Court obligated to fashion arguments for *pro se* habeas petitioners, *see, e.g.,* Harmon v. Hightower, 149 Fed. Appx. 742, 743-44, 2005 WL 2033706 at *2 (10th Cir. Aug. 24, 2005) (court does not construct arguments for a habeas petitioner in the absence of any discussion of the issues). A *pro se* litigant is still required to comply with all procedural rule requirements, the same as any licensed member of the bar. Moreover, there is no authority requiring a court to excuse a *pro se* litigant's compliance with mandatory requirements of exhaustion for which that petitioner bears the burden of proof.

---

[1] Because of this Court's decision to amend in part the Magistrate Judge's Report and Recommendation so as to dismiss the unexhausted claims with prejudice, it will no longer be necessary for Ms. Henning to file an amended petition. The exhausted claims, as set forth *infra*, will proceed. The unexhausted claims are dismissed, with prejudice. The Magistrate Judge will order the State Court Record in order to evaluate the remaining claims.

Here, in reviewing the Magistrate Judge's analysis and recommendation, the Court observes that the Magistrate Judge liberally construed Ms. Henning's pleadings, with respect to the issues of exhaustion, thus complying with his obligations under <u>Haines</u> and <u>Mora</u>.  In making the Court's recommendation, the Magistrate Judge was required to examine the federal habeas petition, the direct appeal, and the state habeas petition, and the petition for writ of certiorari.  The federal habeas petition contains 198 pages, most of which are hand-written.  They are interspersed with exhibit pages from the underlying state court proceeding, which also contained Ms. Henning's hand-written arguments. [Doc. No. 1.] The state habeas petition is a 60-page handwritten document that does not contain numbered claims.  Instead, it is a rambling recitation of arguments, many of which are overlapping and repetitious.  Ms. Henning's petition for writ of certiorari is a handwritten 20-page, single-spaced pleading containing a number of the same or different claims raised in the state habeas petition.

Ms. Henning did not expressly raise a number of claims in her petition for writ of certiorari, but the Magistrate Judge gave her the benefit of the doubt by considering many of her claims exhausted if she raised them in her state habeas petition which she attached to her petition for writ of certiorari.  [Doc. No. 18, ¶ 41.]  While Ms. Henning numbered her claims in the petition for writ of certiorari, her rambling and repetitious pleadings make it very difficult to decide which claims she actually exhausted or which arguments can be ferreted out that might amount to identifiable

claims.[2]  Moreover, at least one Circuit Court has held that a petitioner who requested state appellate review of certain claims did not "fairly apprise the court" of two other claims by attaching a "lengthy brief originally submitted to another court."  <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991).  It is doubtful that Ms. Henning fairly presented all of the claims contained in her state habeas petition to the New Mexico Supreme Court simply by attaching the entire lengthy pleading as an exhibit to her petition for writ of certiorari.  Nonetheless, to grant Ms. Henning the benefit of the doubt, the Magistrate Judge clearly applied a liberal construction to her pleadings.

In addition, the Magistrate Judge was authorized by 28 U.S.C. § 2254(b)(2) to recommend dismissal of Ms. Henning's entire federal habeas petition on the merits if the Magistrate Judge was convinced that the petition did not raise even a colorable federal claim, notwithstanding Ms. Henning's failure to exhaust state court remedies.  However, the Magistrate Judge elected to recommend that many claims proceed for a decision on the merits.  The Court overrules Ms. Henning's argument that the Magistrate Judge failed to apply the liberal standard to which *pro se* litigants' pleadings are entitled.

In her objections, Ms. Henning also argues that Respondents conceded exhaustion when it took the position that Ms. Henning could be foreclosed from bringing a second state habeas petition. [Doc. 20, p. iv.]  The Court disagrees and overrules this objection as well, based on the Magistrate

---

[2]The petition is, for the most part, a virtual "stream-of-consciousness " pleading with hundreds of purported claims, broken down into hundreds of sections and subsections and sometimes another layer of subsections. Although Ms. Henning proceeds *pro se*, the Court is not required to assist her in carrying her burden.  Nor is the Court expected to "hunt for truffles buried in briefs."  *See* <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991) (*per curiam*) (summary judgment decision).  Rather than pursuing one or two claims, Henning's petition forced the Court to analyze masses of pages of arguments and unnumbered and numbered claims in search of phrases that might demonstrate exhaustion – an almost impossible task based on the confusing state of Ms. Henning's pleadings. Her pleadings are a cacophony of entangled and confusing claims.

4

Judge's finding to the contrary, i.e., that it was not convinced by the State's position that Ms. Henning was foreclosed from bringing a second state habeas petition. [Doc. 18, ¶¶ 36, 36.]

Moreover, the mere fact that Respondents agreed that some of Ms. Henning's claims were exhausted when the Magistrate Judge found them unexhausted does not mean that the Court must acquiesce to Respondents' position. This is particularly true where the state of the pleadings makes it incredibly difficult to untangle the morass of claims and determine which were fairly and fully presented to the state court. In addition, the Court already overruled Ms. Henning's argument that the Magistrate Judge failed to apply the requisite liberal interpretation to her *pro se* pleadings.[3]

Ms. Henning next argues that even if she failed to present certain claims in her direct appeal and in the state habeas petition, her inclusion of those claims for the first time in her petition for writ of certiorari to the New Mexico Supreme Court constitutes adequate exhaustion of the claims. She asserts that the State Supreme Court had an adequate opportunity to "reach or pass on the claims set out [for the first time] in the Petition for Writ of Cert. . . . ." [Doc. 20, pp. v-vi.] She further states that the "NM Sup. Ct. denied the Petition for Writ. of Cert. after <u>consideration</u> (presumably of all the claims, not just the ones in the attachment)." [<u>Id.</u> p. vi] (emphasis in original).

The Court disagrees and overrules Ms. Henning's objection. In order to exhaust her state court remedies, Ms. Henning was required either to pursue a claim throughout the entire appellate process of the state, or "throughout one entire judicial postconviction process available in the state." <u>Federal Habeas Corpus Practice and Procedure</u>, §23.3b, pp. 1065, 1073 (5th Ed. 2001). In some instances, Ms. Henning neither pursued claims through the appellate process nor throughout "*one*

_____

[3]Ms. Henning argued that the Magistrate Judge "conceded" that of the 10,000 pages of case-related documents, the Court read only 500 pages. [Doc. 20, p. iv.] The approximate 500 pages of pleadings reviewed by the Magistrate Judge were those that were pertinent to the exhaustion issue. Review of the entire state court record was not necessary for the narrower determination of exhaustion. Thus, the Magistrate Judge correctly limited his review to the appropriate documents.

*entire judicial postconviction process.*"  In other words, she did not raise the claim on appeal nor did she pursue it in the state habeas petition along with the petition for writ of certiorari.  While she may have asserted claims for the first and only time in the petition for writ of certiorari to the New Mexico State Court, this does not amount to pursuit of a claim throughout "one entire judicial postconviction process."  Instead, she sought to pursue the claim in one part of the process, rather than in the entire process.

In addition, in view of Ms. Henning's dizzying array of lengthy, confusing handwritten and sometimes un-numbered claims in the state court pleadings, the Court concludes that the New Mexico state courts did not have a meaningful opportunity to address claims raised for the first time in the petition for writ of certiorari.  Stated differently, such claims were not fully and fairly presented to the state courts.  Thus, the Court overrules Ms. Henning's argument to the contrary.

Finally, in her general objections, Ms. Henning claims she is actually innocent and that while she may not have used the precise words "actual innocence" in her federal habeas petition, she did "raise the issue in many ways."[4] [Doc. 20, pp. vi-ix.] It is not clear whether Ms. Henning raises an actual innocence argument in an attempt to overcome a possible procedural bar or if she seeks to raise a new claim in her federal habeas petition, or both.  She argues, in part, that actual innocence is an exception to the procedural bar rule based on an alleged miscarriage of justice. [Doc. 20, p. vi.] She also asserts that there was "newly discovered evidence" although she further explains that the evidence might not have been new to trial counsel but was new to Ms. Henning. [Doc. 20, p. viii.]

---

[4]The Court observes that a significant portion of Ms. Henning's supposed "actual innocence" argument is more accurately considered a sufficiency of the evidence claim.  The Magistrate Judge found that some of the subclaims of the sufficiency of evidence claim were exhausted.

The Court did not find a procedural bar and therefore, it was not necessary to analyze a "fundamental miscarriage of justice exception."   Rather, the Court recommended that some of Ms. Henning's claims be found unexhausted rather than barred under state law.

In addition, should Ms. Henning seek to add a claim of actual innocence to her federal habeas petition, she cannot do so in her objections.  It is inappropriate to raise new issues for the first time in objections to a magistrate judge's recommended disposition.  *See* <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426-27 (10th Cir. 1996); <u>Tracy v. Addison</u>, 16 Fed. Appx. 928, 2001 WL 901142 n.4, at *2 (10th Cir. Aug. 10, 2001), *cert. denied,* 535 U.S. 1022 (2002).

The Court overrules all of Ms. Henning's general objections for the reasons set out above.

## III.   SPECIFIC OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS OF UNEXHAUSTED CLAIMS

Ms. Henning first notes that any claim to which she does not respond in her objections is conceded to be unexhausted. [Doc. 20, p. ix.] Having made that concession, Ms. Henning objects to the majority of the Magistrate Judge's proposed findings as to claims that were unexhausted.

### MAGISTRATE JUDGE ("MJ") ¶ 43 (Claim I, subclaim 4)

Henning alleged that lead detective Nick Gonzalez's testimony should have been excluded because of his death and the fact that she did not have an opportunity to cross-examine him.  In her objections, Ms. Henning simply re-argues the original claim and also refers to her state habeas <u>addendum</u>.  The Court notes that the Magistrate Judge advised the parties that the objections were not intended to allow the parties to re-argue positions previously asserted.  Moreover, the Court does not find an "addendum" to the state habeas petition, nor did Henning refer to an addendum in her response to the Motion to Dismiss.  In addition, Respondents did not attach an addendum as an exhibit to their Answer or identify that an addendum was filed in state court.  Finally, the state court

judge, in his decision denying the state habeas petition, did not refer to an addendum.  The Court determines it is too late to raise possible claims buried in purported additional pleadings when this matter was already fully briefed by the parties with respect to the motion to dismiss.  Thus, the Court disregards Ms. Henning's references to a state habeas addendum.

The Court reviewed portions of the other pleadings to which Henning referred in her objections.  However, her generalized allegations that "[trial counsel] allowed the false evidence to be an enhancement factor for a death penalty trial" [state habeas petition , p. 42] do not fully and fairly present the claim regarding exclusion of Detective Gonzalez's testimony to the state courts.  Similarly, the allegations on page 51 of the state habeas petition, to the effect that the state court judge dismissed the "only hard and incontrovertible evidence . . . against Mr. Wm. Miller due to the lead detective's death" does not fully and fairly present this specific claim to the state courts.

The Court already determined that Henning's first and only specific reference to the claim in her petition for writ of certiorari (¶ 11) is insufficient to exhaust the claim.

### MJ ¶ 44 (Claim I, subclaim 5)

Henning alleged that Judge Murdoch allowed the introduction of erroneous evidence and allowed unethical behavior from prosecutors that resulted in the first Grand Jury being "nollied" and that Judge Murdoch exhibited bias towards Ms. Henning.  Henning's arguments that the issue was exhausted are unpersuasive and overruled. [Doc. 20, p. x.] The claim was not fully and fairly presented to the state courts.

### MJ ¶ 45 (Claim I, subclaim 8)

Henning alleged that the trial judge did not object to defense counsel's alleged statement to the jury that Henning was a paranoid schizophrenic.  Ms. Henning argues in her objections that she

raised this claim in her petition for writ of certiorari.  This is insufficient, as already explained.  The claim was not fully and fairly presented to the state courts.

### MJ ¶ 53 (Claim II, subclaim 1(a))

Henning alleged that defense counsel's failure to file a motion to dismiss all criminal charges against her because of lack of opportunity to cross-examine the lead detective who had died was ineffective assistance of counsel.  Ms. Henning refers the Court to her state habeas petition at page 49, second sentence from the top of the page.  It is likely that the morass of papers she filed were similarly confusing to Ms. Henning as that record reference is incorrect.  That sentence states "more than a four leaf clover and his lucky rabbit's foot."  As further support, she also refers the Court to the first line of page 7.  Again, she is mistaken as this reference is to a line stating in part, "thoroughly read police reports, interviewed witnesses, filed motions, or ...."  She refers to other pages in her state habeas petition, none of which demonstrate exhaustion.  The fact that she raised the claim in her petition for writ of certiorari is insufficient.  The claim was not fully and fairly presented to the state courts.

### MJ ¶ 54 (Claim II, subclaim 3)

This claim is repetitive as to the right to cross-examine Detective Gonzales.  It was not fully and fairly presented to the state courts as explained above.

### MJ ¶ 55 (Claim II, subclaims 19 and 20)

Henning alleged that her trial counsel's failure to move to compel the state to preserve forensic evidence for independent testing and failure to submit a motion to produce blood samples from the crime scene for independent testing was ineffective assistance of counsel.  Ms. Henning's objections reference portions of the state habeas petition where she argues that the defense filed no motions and that this was "newly discovered evidence" Henning did not know about until after she

9

filed her pleadings.  This argument is unpersuasive.  However, further review of Ms. Henning's direct appeal convinces the Court that subclaims 19 and 20 were fully and fairly presented to the state courts.  (Appellant's Brief-in-Chief, p. 44.)  Thus, they are exhausted.

### MJ ¶ 58 (Claim II, subclaim 27)

Henning alleged that her trial attorney's failure to present evidence that Ms. Henning testified that no one removed her blood by any means was ineffective assistance of counsel.  The Court reviewed the references to the state habeas petition supplied by Ms. Henning but they are too vague to demonstrate the claim was fully and fairly presented to the state courts.

### MJ ¶ 59 (Claim II, subclaim 33)

Henning alleged that her attorney's failure to use exhibits, graphs, and charts at trial when he knew that the State spent $20,000 on one exhibit was ineffective assistance of counsel.  Again, Ms. Henning's references to the state habeas petition are general in nature and do not demonstrate the claim was fully and fairly presented to the state courts.

### MJ ¶ 61 (Claim II, subclaim 38)

Henning alleged that her attorney's failure to preserve an issue for review regarding objections to DNA evidence was ineffective assistance of counsel.  Ms. Henning states the issue was raised on direct appeal.  On appeal, Henning argued that defense counsel was *per se* ineffective for his failure to file a motion to suppress DNA evidence based on the fact that the State consumed all of the blood sample evidence during its testing.  Henning also argued, on direct appeal, that defense counsel should have hired a DNA expert to testify that the blood evidence should not have been consumed by the State, based on the amount of blood collected.  The Court determines that this claim was fully and fairly presented to the state courts on direct appeal. (Appellant's Brief-in-Chief, pp. 43-44.)

10

**MJ ¶ 62 (Claim II, subclaims 40 and 41)**

Henning alleged that trial counsel's failure to preserve a claim that the jury instructions did not conform with the UJI resulted in the New Mexico Supreme Court's fundamental error review only. She asserted this was ineffective assistance of counsel. Ms. Henning points to her direct appeal as proof that the claim was exhausted. In reviewing the appellate decision along with some of Henning's briefing on the appeal, it appears that Ms. Henning raised an issue on appeal that her conviction for felony murder should be reversed because the accessory felony murder instruction was confusing and did not conform with the UJI. However, this is not the same claim asserted in the federal habeas petition, which is far more general in nature. Thus, the Court dismisses these subclaims, with prejudice, for failure to state a cognizable claim.

**MJ ¶ 65 (Claim II, subclaim 49)**

Henning alleged that defense counsel's failure to ask an expert about a vacuum cleaner and its chain of custody was ineffective assistance of counsel. Ms. Henning refers to page 19 of her state habeas petition where she alleges that the trial judge suppressed Allied Van Lines' inventory list which would have shown the steam cleaner was not in New Mexico. This allegation simply is not sufficient to fully and fairly present a claim of ineffective assistance of counsel with respect to questioning an expert to the state courts. Ms. Henning's additional arguments at page 34 of her state habeas petition also do not fully and fairly present the claim to the state court courts.

**MJ ¶ 66 (Claim II, subclaims 51 and 52)**

Henning alleged that trial counsel's possession of co-defendant's motion to the State requesting DNA related materials and defense counsel's failure to raise objections regarding the introduction of DNA evidence from a DNA Criminalities Report, dated 9/20/00, and counsel's failure to preserve this issue for later review were ineffective assistance of counsel. Ms. Henning

refers the Court to statements in her state habeas petition regarding "failure to disclose actual DNA test results which conflicted with public statements from APD forensics dept." and failure to disclose Exhibit 48 presented to the Grand Jury (Henning's Motion to Compel Disclosures). She also relies on an argument made at page 12 of her state habeas petition (although she references pages 10 and 11, further confusing the matter) wherein she argued that defense counsel "chose to suppress all of the above exculpatory evidence . . . ." The alleged exculpatory evidence to which she referred in that paragraph included a detective's handwritten notes, gross negligence in collection practices regarding evidence, failure to produce Detective Fox's log records as well as Ms. Henning's originals, etc. The Court does not find that the claims related to DNA evidence from a 9/20/00 Report were fully and fairly presented to the state courts.

### MJ ¶ 67 (Claim II, subclaim 57)

Henning alleged that trial counsel's failure to discredit the prosecution's case theory of a "pitched battle" between Henning and Girly was ineffective assistance of counsel. The Magistrate Judge observed that the phrase "pitched battle" was never located in any of the pleadings. Ms. Henning does not dispute this in her objections, but rather argues that some of the trial testimony did not support the theory. The claim was not fully and fairly presented to the state courts.

### MJ ¶ 97 (Claim II, subclaim 15)

Henning alleged that trial counsel's failure to interview the many witnesses who entered Girly's apartment and who might have contaminated the scene was ineffective assistance of counsel. Henning's generalized arguments that trial counsel failed to interview key witnesses in a timely manner or failed to interview witnesses before trial began are insufficient to have fully and fairly presented this claim to the state courts.

**MJ ¶ 104 (Claim II, subclaims 5 and 6)**

Henning alleged that defense counsel's failure to request a "voice print" of a taped conversation between Miller and Henning and failure to request a transcript of the tape were ineffective assistance of counsel.  Henning cites to the state habeas petition (p. 19) where she alleged that the trial court improperly allowed into evidence edited and tampered taped conversations which were never revealed to her.  On page 37 of the state habeas petition, Henning argued that the taped conversation between Miller and Henning disappeared.  These references in the state habeas petition do not mention the failure to obtain a "voice print" or to request a transcript.  While at least part of the claim is raised in the petition for writ of certiorari (p. 9, ¶ 27), this is insufficient to deem it fully and fairly presented to the state courts.

**MJ ¶ 105 (Claim II, subclaim 10)**

Henning alleged that defense counsel's failure to present evidence that other people were in Henning's garage and car before Girly disappeared could have shown contamination of the evidence or scene.  She contends that this was ineffective assistance of counsel.  Ms. Henning's allegations that defense counsel generally failed to provide defense witnesses is not sufficient to have fully and fairly presented this claim to the state courts.

**MJ ¶ 106 (Claim II, subclaim 11)**

Henning alleged that trial attorney's failure to summon Officer Gracyk to testify about what he heard Miller say at a soccer game regarding having given Hossencofft a gun was ineffective assistance of counsel.  Ms. Henning identifies page 30 of her state habeas petition (last line) which asks why Miller would tell "absolutely everyone including complete strangers at soccer matches . . . . .)."  This is insufficient to have fully and fairly presented the claim to the state courts.

13

**MJ ¶ 107 (Claim II, subclaim 15)**

Henning alleged that trial counsel's failure to impeach Detective Fox regarding the condition of duct tape was ineffective assistance of counsel.  Ms. Henning's generalized reference (p. 52, state habeas petition) to conflicting evidence about the condition of the duct tape that was found is insufficient for the Court to conclude that this claim was fully and fairly presented to the state courts.

**MJ ¶ 109 (Claim II, subclaim 23)**

Henning alleged that defense attorney's failure to cross-examine the State's witnesses regarding a change in testimony from the Grand Jury to trial regarding how many drops of blood were found on Girly's carpet was ineffective assistance of counsel.  The claim was not fully and fairly presented to the state courts.

**MJ ¶ 110 (Claim II, subclaim 25)**

Henning alleged that trial counsel's failure to ask State's witnesses whether they contacted Voice Stream to ask them to triangulate Girly's cell phone to locate her was ineffective assistance of counsel.  The Magistrate Judge already observed Henning's reference to possible "triangulation" at page 34 of the state habeas petition.  However, the Court agrees that this reference is not sufficiently clear to deem it fully and fairly presented to the state courts.

**MJ ¶ 111 (Claim II, subclaim 28)**

Henning alleged that trial counsel's failure to tell the jury that the police impounded Henning's Honda a second time, three weeks after it was sold to someone else, was ineffective assistance of counsel.  Henning refers to her state habeas petition (p. 15) where she alleged that the evidence seal on Honda driver's door was broken.  Henning also referred to the state habeas

addendum, which the Court earlier indicated it could not consider.  The claim was not fully and fairly presented to the state courts.

### MJ ¶ 113 (Claim II, subclaim 32)

Henning alleged that trial counsel's failure to bring forth evidence to the jury that the State or State witnesses did not believe in Henning's guilt was ineffective assistance of counsel.  Ms. Henning correctly identifies page 48 of her state habeas petition as having raised this claim.  Thus, it is exhausted.

### MJ ¶ 114 (Claim II, subclaim 34)

Henning alleged that trial counsel's failure to use an email from Gary Wagner, an investigator for defense counsel Meyers and to disclose that evidence "turned" defense counsel against Henning, etc. was ineffective assistance of counsel.  Henning claims this was new evidence that was discovered after all of her appeals or petitions were filed.  The Court concludes that the claim was not fully and fairly presented to the state courts

### MJ ¶ 126 (Claim II, subclaim 2)

Henning alleged that defense attorney's failure to object to the admission of a taped conversation between Henning and Hossencofft divorce attorney Kelley and failure to object to the alteration of the tape were ineffective assistance of counsel.  Although Henning presents argument regarding Kelley's testimony and a later written letter from Kelley to Henning, the Court determines the claim was not fully and fairly presented to the state courts.

### MJ ¶ 128 (Claim II, subclaims 5 and 7)

Henning alleged that defense counsel's failure to offer impeachment evidence about cat hair found on the tarp and her attorney's failure to properly impeach State witnesses by providing a biologist to discredit their testimony were ineffective assistance of counsel.  The Court reviewed the

references supplied by Ms. Henning in her objections and concludes the claim was not fully and fairly presented to the state courts.

### MJ ¶ 129 (Claim II, subclaim 10)

Henning alleged that defense counsel's failure to impeach the State's expert witness regarding a trace evidence report, dated 6/27/01, was ineffective assistance of counsel. Henning claims both that this was newly discovered evidence made known to her only after she filed her appeal and petitions and that this claim is referenced in her state habeas petition at various pages. The Court agrees with the Magistrate Judge that while Ms. Henning made a number of arguments in her state habeas petition regarding defense counsel's general failure to challenge evidence, this was not sufficient to deem the claim fully and fairly presented to the state courts.

### MJ ¶ 132 (Claim II, subclaim 19)

Henning alleged that defense counsel's failure to file a motion to dismiss based on Ms. Henning's constitutional right to confront lead detective Gonzales who had died was ineffective assistance of counsel. Ms. Henning's references to the state habeas petition were reviewed but her arguments were too generalized to be deemed fully and fairly presented the claim to the state courts.

### MJ ¶ 135  (Claim II, subclaim 33)

Henning alleged that defense counsel's failure to inform the jury that the blood drops found in Girly's apartment were in a straight line, thereby disputing the State's "pitched battle" theory, was ineffective assistance of counsel. The claim was not fully or fairly presented to the state courts.

### MJ ¶ 144 (Claim III, subclaim 9)

Henning alleged that a comparison of APD's saliva swab DNA test conducted on herself in 1999 conflicted with findings from a swab test in 2002, thereby indicating a contamination of

evidence by the State, which Henning contends was prosecutorial misconduct.  In her objections, Ms. Henning refers the Court to:

> Ex. 17 & 17a K1 is APD's DNA graph of saliva standard from L. Henning.  On Ex. 17a is K4 blood DNA from A.P.D.  These are the same graphs used in Fed. Habeas under claim 4 sufficiency of evidence.  The A.P.D. 'run' 10-21-99 (pg. 3) is the same as what is in state habeas and F. Hab. Addendum Ex. 46, Ex. 45, and Ex. 17, 17(a) are all the same/connected.

[Doc. 20, p. xiv.] The Court is not able to locate whatever Ms. Henning is attempting to reference. The Court reviewed other references by Ms. Henning, e.g., page 17 of the state habeas petition that discusses an original DNA printout where, according to Ms. Henning, it is evident that there are more than eleven genetic markers on both of the DNA graphs, thereby making Henning and Hossencofft "family or blood-related," a physical impossibility.  The Court cannot decipher the alleged support for having possibly exhausted this claim.  Thus, it concludes that the prosecutorial misconduct claim was not fully and fairly presented to the state courts.

### MJ ¶ 145 (Claim III, subclaim 10)

Henning alleged that the district attorney's reliance on sloppy science and poor evidence collection procedures in retrieving a gun that was found with DNA from an unknown source supported a claim of prosecutorial misconduct.  In her objections, she further argues that the State tested the wrong gun.  She references the state habeas addendum which the Court, as stated previously, disregards since that pleading was never cited before or provided as part of the pleadings on the exhaustion issue.  In addition, Ms. Henning cites exhibits that the Court could not locate in her petition for writ of certiorari.  Even if the claim was raised in the petition for writ of certiorari (*see* p. 15, ¶16), a proposition which is questionable at best, that alone would be insufficient to have fully and fairly presented this prosecutorial misconduct claim to the state courts, for the reasons discussed *supra*.

**MJ ¶ 146 (Claim III, subclaim 11)**

Henning alleged that cross-contamination of evidence as to Jane Doe's skeletal remains and brain matter that had nothing to do with this case was prosecutorial misconduct. Again, Ms. Henning cites to the state habeas addendum which the Court could not locate and thus, disregarded. In the petition for writ of certiorari (p. 15, ¶ 17), Ms. Henning presents argument about alleged cross-contamination of Jane Doe's skeletal remains. However, raising the claim in the petition for writ of certiorari alone, without including it in the state habeas petition, is insufficient to fully and fairly present the claim to the state courts.

**MJ ¶ 147 (Claim III, subclaim 15)**

Henning alleges that Detective Gonzalez's grand jury testimony about blood droplets being round and small and in a straight line refuted the state's theory of a "pitched battle" between Girly and Henning in support of a prosecutorial misconduct claim. In her objections, Ms. Henning states that this grand jury testimony from September 29, 1999 was "newly discovered evidence" about which she did not know until after she filed her appeal. She also provides references to the state habeas petition at pages 8, 10, 14, and 24. Any or all references to which she cites are too general to have fully and fairly presented the claim to the state courts. Henning also cited to her petition for writ of certiorari. Even if the claim is presented, which is highly questionable (p. 15, ¶ 15), it is insufficient to have fully and fairly presented the claim to the state courts.

**MJ ¶ 155 (Claim III, subclaim 12)**

Henning alleged that the prosecution presented false testimony to the first Grand Jury regarding three blood drops being found in a straight line vs. theory of a "pitched battle" supporting a claim of prosecutorial misconduct. Subclaim 12 was broken down into yet more un-numbered and unidentified subsections. Respondents argued that part of subclaim 12 was not exhausted, i.e.,

that portion regarding the line of droplets and "pitched battle" theory.  The Magistrate Judge agreed and found that portion unexhausted.  However, another part of subclaim 12 – that the prosecution made an unsubstantiated claim that the blood found on the carpet was positively identified as Henning's – was allowed to proceed.  Henning's objections focus only on this latter portion of subclaim 12, i.e., the part that already was deemed exhausted.  The Court does not re-visit this part of subclaim 12 or the Magistrate Judge's ruling on it.  As stated previously, part of subclaim 12 was unexhausted and part will proceed.

### MJ ¶ 156 (Claim III, subclaim 13)

Henning alleged that the prosecutor presented inconsistent testimony regarding three blood drops vs. 6 blood drops, supporting a prosecutorial misconduct claim.  Henning argues that some of this evidence is new evidence and that some of the claim was presented in the state habeas petition.  The Court reviewed Ms. Henning's cites and concludes that the claim (this part of subclaim 13) was not fully and fairly presented to the state courts.

### MJ ¶ 157 (Claim III, subclaims 15(B))

Henning alleged that the prosecution presented fabricated testimony from Detective Fox at the Grand Jury proceeding that Hossencofft was arranging for an insanity plea in support of a prosecutorial misconduct claim.  Originally, in her response to the Motion to Dismiss, Ms. Henning conceded this claim was not exhausted.  Now she argues in her objections that it was exhausted.  She refers to "brackets" and parts of her state habeas petition where she alleged "lies" occurred.  The Court concludes that the claim was not fully and fairly presented to the state courts.

### MJ ¶ 158 (Claim III, subclaim 16)

Henning alleged that the prosecutor threatened her during grand jury proceedings, telling her to change her timeline regarding the night of 9/9/99 to match Detective Fox's testimony in support

of a prosecutorial misconduct claim.  Although Ms. Henning argued in her state habeas petition (p. 42) that the jury did not know that the prosecutor lied continuously during the proceeding and tried to coerce Henning to change her testimony to match an altered report of Detective Fox (p. 42), the Court determines that the allegations do not fully and fairly present the specific claim concerning alleged threats regarding the timeline of the night of 9/9/99 to the state courts.

### MJ ¶ 167 (Claim IV, subclaim c)

Henning alleged that two saliva samples taken from her DNA (one in 1999 and one in 2002) matched each other but not the APD test results of blood from Girly's carpet in support of an insufficiency of evidence claim.  Henning claims this is newly discovered evidence but also found in her state habeas petition.  The Court agrees with the Magistrate Judge's findings that while Ms. Henning referred to saliva samples in her state habeas petition, the claim was not fully and fairly presented to the state courts.

### MJ ¶ 168 (Claim IV, subclaim e)

In support of an insufficiency of evidence claim, Henning alleged that she presented receipts establishing that she could not have been at Girly's apartment or in Magdalena, NM at the pertinent times.  In her objections, she correctly argues that in her federal habeas petition, she never used the word "receipts."  In her federal habeas petition, she stated that could not have been present in the apartment in Magdalena due to evidence of a credit card charge, a check written to a supermarket and an ATM videotape all having "time/date" stamps.  The claim is exhausted as it was presented in her state habeas petition at page 16.

### MJ ¶ 172 (Claim IV, subclaim o)

Henning alleged that the State's theory of a "pitched battle" between Henning and Girly was not credible in support of an insufficiency of evidence claim.  In her objections, Ms. Henning states

20

this was part of the "newly discovered evidence." The Court concludes the claim was not fully and fairly presented to the state courts.

**MJ ¶ 173 (Claim IV, subclaim r)**

In support of her insufficiency of evidence claim, Henning alleged that evidence was not presented that might have established her innocence, particularly in the form of the absence of a body and absence of her fingerprints in Girly's apartment, car or personal effects. In the federal habeas petition, Ms. Henning alleged as part of subclaim "r" that no "prints" were found in Chew's apartment, car or on her personal effects. In her state habeas petition, Ms. Henning argued that there was no forensic evidence from Chew's apartment, car or tarpaulin or clothes found in Henning's home, clothing, trash, car or person. The Court determines that Ms. Henning allegations in the state habeas petition fully and fairly presented the claim to the state courts.

**MJ ¶ 175 (Claim IV, subclaim r)**

In this part of subpart "r," Henning alleged that the tarp found near Magdalena was contaminated by police after they placed it in contact with a drop cloth from Henning's house, thereby allowing for the transfer of trace evidence, etc. in support of an insufficiency of evidence claim. In her objections, Henning refers to "Ex. 52, pg. 25 asterisks denote comment and A.P.D. evidence collection and tracking and preservation, in st. habeas." This reference was not helpful. The Court could not locate any claims or argument in the state habeas to show that this claim was fully and fairly presented to the state courts.

## IV.   **CONCLUSION**

In sum, the Court agrees with a majority of the Magistrate Judge's proposed findings and recommendations regarding Respondents' Motion to Dismiss and overrules Ms. Henning's corresponding objections. The Court sustains a number of Ms. Henning's objections as to other

subclaims and determines, as stated above, that certain claims, deemed not to have been exhausted, actually were exhausted.   Therefore, the Court re-states below which claims were exhausted and which were not exhausted, thereby modifying the Magistrate Judge's findings and recommendations.

The Court modifies the Magistrate Judge's proposed recommendation in one other way as well.   The Magistrate Judge recommended that Henning's mixed petition be dismissed, without prejudice, in its entirety, unless Ms. Henning elected to amend her petition to present only her exhausted claims in the federal habeas petition.   Ms. Henning already filed a notice with the Court indicating her intention to dismiss the unexhausted claims and to proceed with an amended federal habeas petition.

This will not be necessary.   The Court determines that even if Ms. Henning returned to state court and exhausted the unexhausted claims, she would be barred from re-presenting the same claims in a federal habeas petition based on the one-year statute of limitations, 28 U.S.C. § 2244(d)(1)(A).   It is incontrovertible that the one-year limitations period is not tolled during the time in which a federal habeas petition is pending in a federal district court.   Duncan v. Walker, 533 U.S. 167, 181-82 (2001); York v. Galetka, 314 F.3d 522, 524 (10th Cir. 2003).   Henning timely filed the instant federal habeas petition on March 26, 2008.   However, it is already March 2009, and Ms. Henning clearly used up months of her limitations period during the state habeas proceedings.   Thus, the unexhausted claims will be dismissed, with prejudice.[5]

_____

[5]This does not mean that Ms. Henning is foreclosed from presenting those unexhausted claims in a state habeas petition to the state courts should she seek to do so.   See Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1215 (10th Cir. 2003) (Hartz, J., concurring) ("dismissal with prejudice . . . might not preclude the plaintiff from proceeding in state court"), abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 215-217 (2007).   See also State of New Mexico v. Western Estate, 139 F. App'x 37, 38 (10th Cir. 2005) (explaining that whether the party was barred from filing his claim in a New Mexico state court is not determined solely by how the federal court dismissal is styled).

## I.   *EXHAUSTED* CLAIMS THAT PROCEED

**?Claim I (Denial of Due Process): Subclaims:  1, 2, 3, 6, 7, 9, 10, 11, 12, 13, 14;**

**?Claim II (IAC) Section I: Subclaims:  1(part), 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 34, 36, 37, 38, 39, 44, 45, 46, 47, 48, 50, 53, 54, 55, 56;**

**?Claim II (IAC) Section II: Subclaims:  1, 2, 3, 4, 5, 6, 7, 11, 13, 16, 17;**

**?Claim II (IAC) Section III: Subclaims:  1, 2, 3, 4, 7, 8, 9, 12, 13, 14, 17, 18, 19, 20, 21, 22, 24, 26, 27, 29, 30, 32, 33, 35;**

**?Claim II (IAC) Section IV: Subclaims: 1, 8, 9, 12, 13, 15, 16, 17, 20, 21, 22, 25, 27, 28, 29, 30, 31, 32;**

**?Claim III (Prosecutorial Misconduct) Section I: Subclaims: 1, 2, 3, 4, 5, 6, 7, 8, 12, 13, 14, 16, 17, 18, 20;**

**?Claim III (Prosecutorial Misconduct) Section II: Subclaims:  1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12(part), 13(part), 14, 15A, 18, 19;**

**?Claim III (Prosecutorial Misconduct) Section III: Subclaim: 1, 2(part); and**

**?Claim IV (Sufficiency of the Evidence): Subclaims:  a, b, d, e, f, I, j, l, m, n, p, q, r (parts).**

## II.   *UNEXHAUSTED* CLAIMS THAT ARE DISMISSED, WITH PREJUDICE

Claim I (Denial of Due Process): Subclaims 4, 5, 8;

Claim II (IAC) Section I: Subclaims:  1a, 3, 22.5, 24, 27, 33, 35, 42, 49, 51, 52, 57;

Claim II (IAC) Section II: Subclaims:  8, 9, 10, 12, 14, 15, 18;

Claim II (IAC) Section III: Subclaims:  5, 6, 10, 11, 15, 16, 23, 25, 28, 31, 34;

Claim II (IAC) Section IV: Subclaims:  2, 3, 4, 5, 6, 7, 10, 11, 14, 18, 19, 23, 24, 26, 33;

Claim III (Prosecutorial Misconduct) Section I: Subclaims: 9, 10, 11, 15, 19;

Claim III (Prosecutorial Misconduct) Section II: Subclaims: 12(part); 13(part); 15B, 16, 17, 20;

Claim III (Prosecutorial Misconduct) Section III: Subclaim: 2(part); and

Claim IV (Sufficiency of the Evidence): Subclaims: c, g, h, k, o, r(parts).

## III.   CLAIMS THAT ARE DISMISSED FOR FAILURE TO STATE A CLAIM

Subclaims 40, 41, 43 (Claim I, Ineffective Assistance of Counsel, Section I).

24

IT IS HEREBY ORDERED that the amended findings and recommended disposition of the United States Magistrate Judge are adopted by the Court;

IT IS ALSO ORDERED that Respondents' Motion to Dismiss is granted in part and denied in part, as described herein;

IT IS ALSO ORDERED that Ms. Henning's subclaims 40, 41, and 43 (Claim I, Ineffective Assistance of Counsel, Section I) are dismissed, with prejudice, for failure to state a claim; and

IT IS FURTHER ORDERED that the unexhausted claims set out on page 24 are dismissed with prejudice, with the result that the claims deemed exhausted set out on page 23 will proceed for a report and recommendation by the Magistrate Judge following a request and review of the entire case record.


_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE