IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


LINDA HENNING,

                Petitioner,

    vs.                                             No. CIV 08-328 RB/LFG

ALLEN COOPER, Warden, and the
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

                Respondents.


## ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS OF FACT AND RECOMMENDED DISPOSITION AND DISMISSING CASE WITH PREJUDICE

THIS MATTER comes before the Court on the Magistrate Judge's Findings of Fact and Recommended Disposition [Doc. 27].  Petitioner Linda Henning ("Henning") filed Objections [Doc. 33] to the Findings and Recommended Disposition.  The Court, having considered the recommendation and objections thereto and having conducted a *de novo* review of the pleadings and record in this case, overrules the objections and adopts the recommended disposition.

### "General Objections"

In a section labeled "General Objections," Henning focuses on allegations of ineffective assistance of counsel.  She asserts that her trial counsel was "lazy, ill-prepared, and so incompetent that his lack of efforts guaranteed Petitioner's conviction."  She says that he aligned his interests with the prosecution.  She cites a case holding that an evidentiary hearing is required "when there is a question about defense counsel's mental competence."  She contends that "[t]his was an orchestrated effort by Mitchell that virtually assured Petitioner a 'guilty verdict'" and that "[d]efense counsel's sole interest was to protect the interests of his main employer – the State."  [Doc. 33-2, at 4-5].

Henning's primary complaints about her trial attorney, Gary Mitchell, concern trial strategy and tactical decisions.  For example, Mitchell's defense strategy relied on the testimony of witness Diazien Hossencofft ("Diazien"), who acknowledged his part in the kidnaping and murder of the victim Girly Chew and testified that he planted Henning's blood at the crime scene.

With the testimony that Henning's blood was planted, Mitchell did not find it necessary to hire DNA experts to challenge the State's witnesses, who identified blood at the scene as Henning's. Nor was it necessary to hire an expert witness, as Henning argues, to corroborate Diazien's testimony.  In addition, this defense strategy made it unnecessary to seek suppression of DNA evidence, and counsel was not constitutionally ineffective for choosing not to do so.

Considerable deference is given to an attorney's strategic decisions.  Hale v. Gibson, 227 F.3d 1298, 1314 (10th Cir. 2000).  Mitchell's strategic approach was not objectively unreasonable. He relied on Diazien, who was articulate, soft spoken, and at least for many individuals with whom he had dealings, somewhat convincing.  The fact that the strategy did not succeed does not mean that counsel failed to meet the standards of a reasonably competent attorney.  To constitute ineffective assistance, an attorney's performance, including strategic and tactical decisions, must be completely unreasonable, not merely wrong.  Fox v. Ward, 200 F.3d 1286 (10th Cir. 2000).

Henning also contends that Mitchell undermined the credibility of the primary defense witness by stating in opening that Diazien was "absolutely a con artist."  Diazien admitted that he spent his entire life conning people and that his resume was almost entirely false.  There was evidence that he promised women injections that would delay the aging process or cure cancer.  In light of this evidence, it was not an unreasonable strategy for defense counsel, who made the strategic decision to call Diazien as a witness, to acknowledge early on to the jury that the witness had shortcomings, in order the blunt the force of later revelations as to his penchant for making false statements.  By relying on an articulate and oftentimes convincing individual, but acknowledging that he was a "con artist," Mitchell sought to get the best of both worlds.  Mitchell's statement does not amount to ineffective assistance.

2

Henning also faults her attorney for his performance at the death-penalty phase of the trial. Henning did not receive the death penalty sought by prosecutors. Mitchell's performance met the standards of a reasonably competent attorney.

The detailed allegations of ineffective assistance cited in Henning's Objections were raised in her Petition and succeeding documents and thoroughly discussed by the Magistrate Judge. The Court does not find any reason to reject the findings of the Magistrate Judge as to ineffective assistance.

**"Specific Objections"**

In a section labeled "Specific Objections," Henning raises a number of complaints.

Henning faults this Court for not reviewing the trial exhibits, "without which the Court's reconstruction of facts remains incomplete." [Doc. 33-2, at 13]. A federal court considering a habeas petition is not entitled to "reconstruct the facts" of a state criminal trial. Rather, this Court must presume the factual findings of the state court are correct unless the petitioner can rebut the findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999). Henning has not met this stringent standard.

In referring to portions of the Magistrate Judge's Findings stating when grand jury proceedings were held and when Henning was arrested, Henning states that she was "held against her will" at the grand jury proceedings for twelve hours, during which time she was permitted only one break, and "all of the jurors and prosecutors threatened her, yelled at her and refused to allow Pet. a moment to think or gather her thoughts . . . ." [Doc. 33-2, at 14]. She states further that Albuquerque Police Department personnel "came to her home at all hours of the night with no search warrant but drawn guns." She says she was assaulted by A.P.D. personnel on one occasion when police slammed her against the grill of her car, then dragged her into an underground basement bathroom and "sexually battered" her. [Doc. 33-2, at 14].

Apart from the fact that these assertions do not have record support, Henning does not explain how these alleged incidents are relevant to her habeas petition. In addition, Henning's

3

allegations that she was held against her will at the grand jury proceedings, and was arrested by police with drawn guns who assaulted her and sexually battered her in a basement bathroom, are raised for the first time in these Objections.

<u>Objections to the "Procedural Summary" Portion
of the Report and Recommendation</u>

In her objections to the "Procedural Summary" portion of the Magistrate Judge's Report and Recommendation, Henning raises the following issues and allegations [Doc. 33-2, at 15-21]:

Certain exhibits presented to the Fall 1999 grand jury were not fully tested;

Her bail was set at $2.5 million;

"10 defense attorneys were involved to some degree and to some extent – all of whom did little if any preparation for the case";

A tape recording was altered;

Judge Knowles showed bias at a hearing on a pretrial motion to compel, failed to rule on the motion, and failed to sanction the prosecution even after her attorney screamed "You're a fucking liar" at the prosecutor; [1]

One of her attorneys applied pressure to force her to take an "undisclosed" plea bargain;

Her attorneys failed to supply her with copies of any motions, letters or discovery despite her repeated requests;

One of her attorneys, who represented her for nine months, spoke personally to her for only 10 minutes in all that time;

She was "being starved" by the detention center and kept in "complete isolation" for 18 months without fresh air or sunshine and her attorney refused to help her (this allegation is raised for the first time in these Objections);

Defense attorneys did no investigation and failed to supply Henning with copies of documents;

One attorney who represented her for six months "did nothing except 'lie' to Pet. and attempt to steal $50" from her;

---

[1]This allegation is raised for the first time in Henning's Objections.  She makes other allegations in her Objections which do not appear elsewhere in the record; those will be noted in the course of this Report.  Issues raised for the first time in objections to a Magistrate Judge's Report and Recommendation are deemed waived and will not be considered in the *de novo* review. <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996).

Attorney Gary Mitchell represented a witness who testified against Henning;

At the <u>Ogden</u> hearing, attorney Mitchell had a report in his possession by Det. Rocky Stone which discredited the "pink button" theory, but he failed to present it and failed to impeach the witness, thereby "allow[ing] false testimony to go forth to secure a death qualified trial";

The court allowed prosecutors to ask "pointed questions" of prospective jurors during voir dire;

In opening statement, attorney Mitchell referred to Diazien as "absolutely a con artist," thus discrediting the defense strategy of relying on Diazien's testimony;

At trial, attorney Mitchell presented one witness as a friend of Henning's when this was "patently false," he "created a drama for Court TV" by goading and harassing a defense witness, resulting in an emotional outburst, and cross-examined the State's experts without the benefit of any defense experts;

Attorney Mitchell failed to present any evidence at the death penalty portion of the proceedings;

The prosecution unprofessionally yelled "Reverence" for a piece of carpet evidence;

Judge Brennan stated that it's obvious Henning was mentally ill;

The court did not run the sentences concurrently;

Defense counsel's post-verdict argument that all convictions should be dismissed because they were not supported by the evidence was illogical, because defense counsel did not challenge any evidence;

A psychological evaluation presented at her sentencing hearing was flawed, and the Forensic Health Services agency "embellished the truth and essentially lied";

The sentence given was overly severe in light of the one-sided evidence, the "coerced or bribed testimony and disingenuous testimony" of State's witness, and incompetence of counsel;

Certain claims should be allowed to proceed as exhausted;

The New Mexico Supreme Court is "in error" in its opinion denying certiorari, as no rational trial strategy could explain counsel's conduct.

[Doc. 33-2, at 15-21].

Apart from issues raised for the first time in the Objections, the Court considered each of these allegations in its *de novo* review. Most of them were thoroughly dealt with in the Magistrate Judge's analysis, and the Court finds that analysis sound. Some simply state Henning's disagreement with her attorneys' conduct or various rulings by the trial courts; others state

objections to practices which are clearly acceptable or matters of discretion, such as the court allowing the prosecution to ask "pointed questions" to prospective jurors or running Henning's sentences consecutively.  In sum, there is nothing in this set of objections which would justify rejection of the Magistrate Judge's Report and Recommendation.

Objections to the "Evidence Presented at Trial"<br>Portion of the Report and Recommendation

In her objections to the portion of the Magistrate Judge's Report and Recommendation titled "Evidence Presented at Henning's Trial," Henning raises the following issues and allegations [Doc. 33-2, at 21-31]:

> Henning asserts this Court is "in error with their fact-finding," challenging several statements set forth in the Magistrate Judge's description of various witnesses' testimony;

> Henning states that, in the Magistrate Judge's description of certain trial testimony, "the Court is in error and attempting to be deceptive";

> Certain trial testimony described by the Magistrate Judge was "in error," due to defense counsel's failure to thoroughly cross-examine "former jealous and disgruntled co-workers," and "coached testimony from prosecution."

> Certain trial testimony described by the Magistrate Judge is "in error" due to "misleading data" and "errors on nearly all pages" of a DNA crime report;

> Trial testimony as to DNA evidence, as described by the Magistrate Judge, is "in error," due to deficiencies in the State's handling of blood and hair evidence and inaccuracies in the reports;

> This Court is negligent for not reviewing a Trace Evidence Report;

> This Court's "fact-finding is in error," with respect to the Magistrate Judge's description of testimony as to Henning's encounter with the victim, Girly Chew, at a bank where Ms. Chew worked as a teller;

> This Court "has failed once again to do any research," and its statements as to evidence and testimony given at trial as to the sale of homes by Henning and Diazien is therefore erroneous;

> This Court is "in error" and/or "highly biased" in its description of testimony and evidence as to:  Henning's and Diazien's actions and statements in visiting a recreational vehicle dealership; Henning's purchase of a drop cloth and other items; Henning's statements to police as to Diazien's whereabouts on September 10, 1999; the use of walkie-talkies at a bookstore; a sighting of Diazien outside his home on September 9, 1999 with his face painted black and wearing camouflage clothing; Henning's actions in washing her car twice within the space of three days' time;

6

Henning's conversations with Mary Alice Thomas involving a sword kept in Henning's garage (testimony coached by the prosecutor); a long-distance phone call Henning made to Diazien in South Carolina (testimony from a "jealous co-worker"); firearms, bullets and a pink button found in Henning's house, vehicle, and former vehicle; Henning's advice to Ms. Thomas about asserting Fifth Amendment rights; Diazien's arrest on charges of threatening witnesses; letters between Henning and Diazien while they were in jail awaiting trial;

Defense counsel was "lazy, ill-prepared, and incompetent" in relying on Diazien's testimony, when counsel knew Diazien was lying and it was a "ridiculous alibi."

Henning proceeds under a misimpression.  A federal court in habeas review of a state court proceeding does not try the case anew, nor does it test the evidence itself. In this portion of the Report and Recommendation, the Magistrate Judge simply described the evidence presented at trial, giving citations to the record and transcript, and made no independent factual findings as to what happened in the days and weeks surrounding the disappearance of Ms. Chew.  Factual findings are the province of the jury.  A federal habeas petition is not a second trial of the facts, nor is it another chance at an appeal.  Rather, this Court sits only to determine whether constitutional rights were violated.  There was no "error" or "bias" in the Court's description of the evidence and testimony presented in Henning's criminal trial.

<u>Objections to the "Analysis" Portion</u>
<u>of the Report and Recommendation</u>

Henning raises the following objections to the "Analysis" portion of the Magistrate Judge's Findings and Recommended Disposition:

Henning faults as "illogical" the decision of the New Mexico Supreme Court affirming her conviction, for many of the same reasons discussed above, and she argues that the state district judge who denied her habeas relief "made little effort to review the record."  The Magistrate Judge found that the state courts adjudicated Henning's claims on the merits and that their rulings are entitled to deference, and this Court agrees and adopts that finding.

A. *Due Process and Fair Trial*

The Magistrate Judge found that Henning received a fair trial and was not denied due process.  Henning contends that the trial was "one-sided," that her attorney had conflicted loyalties,

that the prosecutors coerced witnesses and submitted erroneous evidence, and that "multitudes of errors" by the trial court affected the outcome.  The Court reviewed each of the findings of the Magistrate Judge and overrules Henning's objections.  In particular, this Court adopts the findings, as follows:

Henning's contention that bail was excessive is mooted by the conviction.

Analysis of the factors set forth in <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972) supports the conclusion that Henning was not denied her right to a speedy trial.

The motion to compel, which Henning alleges Judge Knowles ignored, appears to have been addressed; if it was not, the error was harmless.

There is nothing whatsoever on the record to indicate that Judge Brennan was "not of a sound mind" during Henning's trial.

The record demonstrates that the trial judge and counsel diligently asked each prospective juror about pretrial publicity and the effect it would have on the juror's independent judgment, and the trial judge repeatedly cautioned the jury during trial to ignore any press coverage; there is nothing on the record to indicate partiality on the part of jurors.

The record does not support Henning's assertion that Judge Brennan said Henning is "obviously mentally ill."  A court considering a habeas petition is not a fact-finder and does not have a duty to "use a search engine," as Henning contends it should have, to find public statements made by Judge Brennan.

Henning failed to show that the trial was held in the midst of a media frenzy or "circus atmosphere," either within the courtroom or in the community.

The trial court did not err in excluding evidence of an inventory list for a moving company to support defense contentions as to the whereabouts of a carpet steam cleaner, as the defense was able to adequately present the argument that the cleaner was on the moving van at the time Girly Chew disappeared; did not err in admitting an audiotape of a conversation between Henning and Bill Miller; did not err in admitting an altered letter into evidence as it was used as demonstrative

8

evidence only, with the Court admitting the original version of the letter and permitting the parties to argue the different interpretations that could be drawn from the original version.

B. *Ineffective Assistance of Counsel*

The Magistrate Judge rejected Henning's assertions that she failed to receive constitutionally effective assistance of counsel.  Most of Henning's allegations are discussed above.  For those that are not, the Court has considered Henning's objections to this portion of the Report and Recommendation, finds no error in the Magistrate Judge's analysis of ineffective assistance, and overrules the objections.  Further, the Court does not find Henning's remarks about bias by the Magistrate Judge, and his inability to read at a tenth-grade level without assistance, to be appropriate or helpful in analyzing the issues in this serious case.

C. *Prosecutorial Misconduct*

The Magistrate Judge rejected Henning's allegations of prosecutorial misconduct, and this Court adopts in full the Magistrate Judge's findings on this issue.  Following is a summary of those findings:

Henning fails to identify the exculpatory evidence she asserts was withheld by the prosecution in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Counsel did in fact elicit testimony at trial regarding evidence that Henning claims was cross-contaminated by the State.

Henning produced nothing to substantiate her claims that evidence was mishandled or that tapes were altered.

Her allegation that the State consumed all of the DNA evidence in its testing, thus leaving nothing for the defense to test, is irrelevant since the defense strategy did not rely on DNA testing.

She fails to support her assertion that the prosecution presented false testimony.  In response to the Magistrate Judge's statement that some of the evidence at trial was inconclusive but that this did not render the trial unfair, Henning argues that "all of it" was inconclusive; the Court rejects this assertion as unsubstantiated by the record.

Henning contends that the State publicly and repeatedly alleged that she was, among other things, a "Ninja assassin warrior" and a "cannibal" and that these remarks were intended to taint the jury pool.   The Court agrees with the Magistrate Judge that there is no evidence that the jury was tainted.  A television story on the trial reported that Henning told several people that she consumed the flesh of Girly Chew; however, this story was not aired until after the jury had convicted Henning.  And the prosecutor's statement in a post-trial sentencing memorandum, to the effect that more than one individual reported such remarks by Henning, was also made after the trial.

Henning asserts that the prosecution's witnesses presented false testimony at her trial and that the prosecution otherwise behaved unethically from start to finish.  The Magistrate Judge rejected Henning's claims, which she repeats in her objections, as follows:

False or misleading testimony was given as to the "pink button" evidence, evidence of a letter was altered, DNA and hair evidence was mishandled and trace evidence was cross-contaminated, false or misleading testimony was presented regarding cuts on her hands, sloppy procedures were employed regarding chain of custody, conflicting evidence as to 3-6 blood droplets was presented, test results from stains on a blouse and panties were misrepresented, evidence as to the type and nature of the blood found at the crime scene was withheld, blood evidence was not preserved, prosecutor made an "unhinged" objection to treatment of carpet evidence at trial, various witnesses were threatened or coerced, and perjured testimony was presented as truthful.

The Court finds that there were no actions by the prosecution in Henning's case which violated any specific constitutional right, or "so infected the trial with unfairness as to make the resulting conviction a denial of due process," Matthews v. Workman, __ F.3d __, 2009 WL 2488142, at *8 (10th Cir. 2009), *quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

The Magistrate Judge's analysis and conclusions as to Henning's allegations of prosecutorial misconduct were not in error, and they are adopted by this Court.

D.   *Insufficiency of the Evidence*

The Magistrate Judge rejected Henning's assertions that there was insufficient evidence to

10

support her convictions, concluding that Henning:

> sets forth essentially the same challenges to the evidence that
> supported her other claims, including the claims of ineffective
> assistance of counsel and prosecutorial misconduct.  Henning asks
> this Court to accept her hypotheses, which she posits are or could be
> consistent with a finding of innocence, and to reject all of the
> evidence consistent with the trial jury's verdict.

[Doc. 27, at 86].

The function of the Court in a federal habeas proceeding, faced with a petitioner's challenge to sufficiency of the evidence, is to review the record as a whole and "to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).  The test is not whether the reviewing court believes that the evidence at the trial established guilt beyond a reasonable doubt, but rather the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id., at 318-19.  In reviewing the record, the Court does not weigh conflicting evidence or consider witness credibility.  United States v. Hien Van Tieu, 279 F.3d 917, 921-22 (10th Cir. 2002).

In Henning's direct appeal, the New Mexico Supreme Court rejected her claim that the evidence was insufficient to support the conviction.  The New Mexico district court also rejected the same claim, raised in Henning's state habeas petition.  The Magistrate Judge in this case thoroughly reviewed the record again, and came to the same conclusion.  On de novo review, this Court also rejects Henning's contentions.  There was sufficient evidence, direct and circumstantial, to support the jury's verdict.

## Evidentiary Hearing

Henning requests an evidentiary hearing.  The Court need not hold an evidentiary hearing, as there is no factual conflict material to resolution of this case.  Henning would be entitled to an evidentiary hearing only if facts are in dispute and she did not receive a full and fair hearing in state court.  An evidentiary hearing is unnecessary if the claims can be resolved on the record.  Anderson v. Attorney General, 425 F.3d 853, 859 (10th Cir. 2005).

Henning goes into great detail in her Objections, as she has in all of her filings in this matter. She concludes her 90-page Objections by stating, "To not find 1 issue with merit out of 200 pgs. is also suspect." [Doc. 33-3, at 30].  She also asserts:

> The Court found all allegations in Habeas Petition to be harmless or without merit – nearly 200.  Petitioner objects and states Court's decision to present the prosecution's case and re-construct facts are in error.  This Court needed to review de novo in an independent setting the history of this case and issue a writ for an evidentiary hearing, anything less is an abuse of discretion.

[Doc. 33-2, at 12].

It is neither the number of allegations of factual dispute, nor the volume in which these complaints are voiced that determines whether the Court will hold an evidentiary hearing.  There may be factual disputes in this case which could in theory be resolved by an evidentiary hearing; however, there are none which would change the outcome.  The Court therefore declines Henning's request for an evidentiary hearing.

### **Order**

IT IS THEREFORE ORDERED that Henning's Objections are overruled, and the Magistrate Judge's Findings and Recommended Disposition are adopted by the Court.

IT IS FURTHER ORDERED that Henning's Petition for Habeas Corpus is denied, and Henning's claims are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE